UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD DONALD BURLEY,

|  |  |
|---|---|
| Plaintiff | Case No. 2:18-CV-12239 |
|  | District Judge Avern Cohn |
| v. | Magistrate Judge Anthony P. Patti |

MICHELLE WILLIAMS-WARD,
RANDALL HAAS,
GEORGE STEPHENSON,
REGINA JENKINS-GRANT, and
S. WILLIAMS (CARYLON
WILLIAMS),

Defendants.
_____/

## REPORT AND RECOMMENDATION TO DENY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (DE 23) and TO DENY PLAINTIFF'S MOTION FOR BENCH TRIAL ON EXHAUSTION DISPUTE (DE 26)

**I.    RECOMMENDATION**:  For the reasons stated below, the Court should

**DENY** Defendants' January 23, 2019 motion for partial summary judgment (DE

23) and **DENY** Plaintiff's February 12, 2019 motion for bench trial on exhaustion

dispute (DE 26).

**II.    REPORT:**

    **A.    Prior Lawsuits**

Edward Donald Burley is currently incarcerated at the MDOC's Oaks Correctional Facility (ECF), where he is serving a sentence imposed on February 22, 2006 in Case No. 04013795-FC-A (Genesee County).[1]  This case was appealed in state court on several occasions.  *See People v. Burley*, No. 133517, 478 Mich. 930, 732 N.W.2d 916 (June 26, 2007); *People v. Burley*, No. 141516, 488 Mich. 1045, 794 N.W.2d 589 (Mar. 8, 2011); and, *People v. Burley*, No. 154241, 500 Mich. 959, 891 N.W.2d 870, 871 (Apr. 4, 2017).

Along the way, Burley is or has been a party to quite a few lawsuits in this Court.  *See Burley v. Prelesnik* (2:11-cv-11258-AC-MJH) (habeas corpus);[2] *Burley v. Miller, et al.* (2:15-cv-12637-DML-MKM) (prisoner civil rights); *Burley v. Quiroga, et al.* (2:16-cv-10712-GCS-PTM) (prisoner civil rights); *Burley v. Abdellatif, et al.* (2:16-cv-12256-AJT-DRG) (prisoner civil rights); *Burley v. Rider et al.* (2:17-cv-10110-PDB-APP) (prisoner civil rights); *Burley v. Knickerbocker, et al.* (2:18-cv-12625-GAD-MKM) (prisoner civil rights); and,

---

[1] *See* www.michigan.gov/corrections, "Offender Search," last visited May 14, 2019.

[2] This case was twice appealed to the Sixth Circuit, Case Nos. 12-02323, 13-02201.

*Burley v. Corizon Health, Inc., et al.* (2:19-cv-10370-DML-RSW) (prisoner civil rights).[3]

Additionally, Burley is or has been a party to several Western District of Michigan cases, including: **(a)** *Burley v. Martin, et al.*, 1:2012-cv-00308 (prison condition), which involved an appeal to the Sixth Circuit (13-01599); **(b)** *Burley v. Leslie, et al.*, 1:13-cv-00599-RJJ-RSK (W.D. Mich.) (prison condition); **(c)** *Burley v. Daniels, et al.*, 1:15-cv-00570-RHB-PJG (W.D. Mich.) (prison condition); and, **(d)** *Burley v. Cooley, et al.*, 1:15-cv-00320-RJJ-RSK (W.D. Mich.) (prison condition).

### B.    Instant Lawsuit

On July 17, 2018, while incarcerated at Parnall Correctional Facility (SMT), Burley filed the instant lawsuit against several Macomb Correctional Facility (MRF) Defendants:  **(a)** Michelle Williams-Ward, an Assistant Resident Unit Supervisor (ARUS); **(b)** Warden Randall Haas; **(c)** Deputy Warden George Stephenson; **(d)** Regina Jenkins-Grant, a Resident Unit Manager (RUM); and, **(e)** seemingly, "S. Williams," who later appeared as "Carylon Williams."  (DE 1 at 1-3, 7, 17; *see also* DE 16.)[4]

---

[3] Burley is also listed as an interested party in *McBride, et al. v. MDOC, et al.* (2:15-cv-11222-SFC-DRG).

[4] The caption to Plaintiff's instant complaint lists a fifth Defendant, "ARUS S.

By way of background, Plaintiff declares that, on March 19, 2015, while he was incarcerated at Lakeland Correctional Facility (LCF), he was approved for prisoner-to-prisoner mail with Christopher Snow, who Plaintiff describes as "a civil witness in People v. Leslie, 13-599[.]"  (DE 1 at 7 ¶ D, DE 27 at 26 ¶ 15.) This appears to be a reference to *Burley v. Leslie, et al.*, 1:13-cv-00599-RJJ-RSK (W.D. Mich.).

Plaintiff claims to have arrived at MRF on March 26, 2015.  (DE 1 at 17, DE 27 at 24 ¶ 1.)  While the text of Plaintiff's complaint is somewhat difficult to navigate, it does describe the "approximate time period" of the events giving rise to Plaintiff's claims as "from June [2015] through March 2016."  (DE 1 at 6 ¶ C.) Still, other pages of the complaint, coupled with its attachments, suggest that a wider period of time is at issue, which will be discussed in further detail below.  At

---

Williams," although there is not a separate paragraph identifying such a Defendant. (DE 1 at 1-3.)  Still, an "S. Williams" is mentioned within the text of the complaint.  (*See*, *e.g.*, DE 1 at 7 ¶ D, DE 1 at 17.)  However, this appears to have been a mistake, as counsel's appearance lists a "Carylon Williams" (DE 16), and Plaintiff declares that he made a typographical error in using "S. Williams" instead of "C. Williams."  (DE 27 at 25 ¶ 7.)  In addition, Plaintiff separately describes his claims against Defendants Michelle Williams-Ward, Haas, Stephenson, and Jenkins-Grant, without a corresponding section for claims against "S. Williams." (*See* DE 1 at 18-22.)  Thus, the Court questions whether Plaintiff intended "S. Williams," or, as the Attorney General identifies her, "Carylon Williams," to be a fifth Defendant.

this point, it suffices to say that Plaintiff's complaint alleges claims based on, *inter alia*, retaliation and access to courts.  (DE 1 at 4, 6-7, 17.)

### C.    Pending Dispositive Motion

Currently pending before the Court is the MDOC Defendants' January 23, 2019 motion for partial summary judgment.  (DE 23.)  Specifically, Defendants argue that:

> **1.**    Summary judgment is warranted with respect to most of Burley's claims due to his failure to properly exhaust his administrative remedies with respect to them.
>
> **2.**    Summary judgment is warranted with respect to Burley's claim that Defendant Williams denied him access to the courts[,] because the allegations in the complaint do not present a cognizable claim.

(DE 23 at 13-24).

Relatedly, Plaintiff has filed both a motion for a bench trial on exhaustion dispute (DE 26) and a response (DE 27).  Defendants have filed a combined reply / response (DE 29), and Plaintiff has filed a sur-reply (DE 31), which was later approved by the Court (DE 32).

### D.    Discussion

> **1.    Defendants have not shown that Plaintiff failed to exhaust his available administrative remedies in accordance with 42 U.S.C. § 1997e(a) as to his claims against Defendants.**
>
> **a.    Relevant subject matter and time period**

Plaintiff's complaint is purportedly based on several federal constitutional or statutory rights, among which is access to the courts, *i.e.*, his right "to petition the Government for a redress of grievances[,]" under the First Amendment, and retaliation. (DE 1 at 4.) As noted above, the text of Plaintiff's complaint is somewhat difficult to navigate, although it is replete with references to retaliation and access to the Court. (*See* DE 1 at 6-7, 17-22.)

Notwithstanding this navigational difficulty, it makes sense that the events underlying Plaintiff's claims against Defendants, each of whom is identified as located at MRF, span a period of time following his alleged March 26, 2015 arrival at MRF. (DE 1 at 2-3, 17.) When taking into consideration the pleading's attachments, including the grievances identified below, the relevant time period appears to include:

- Plaintiff's April 10, 2015 attempt to send out legal mail, seemingly the subject of MRF-15-04-0704-15b (DE 1 at 35-36, DE 23-2 at 93-97);

- Plaintiff's May 18, 2015 letter to Stephenson, which bears the same date as the incident underlying MRF-15-05-0955-17z (DE 1 at 23-24, 37; DE 23-2 at 102-106);

- Plaintiff's June 12, 2015 attempt to send out "3 parcels" of legal mail (to Heyns, Levin, and Snyder) regarding Case No. 04013795-FC-A (Genesee County) (DE 1 at 25-27);

- Plaintiff's June 14, 2015 letter to Stephenson and Haas regarding "continued denial of access to courts & violations of policy by ARUS M. Williams," (DE 1 at 33);

- Stephenson's June 18, 2015 reply to prisoner correspondence (DE 1 at 34);

- Plaintiff's September 25, 2015 attempt to send Step III grievance appeals, specifically Step III grievances in MRF-15-06-01174-12d4 and MRF-15-07-012040-12I, each of which was received at Step III on October 1, 2015 (DE 1 at 28, DE 23-2 at 18);

- Plaintiff's January 22, 2016 attempt to mail grievance appeals in MRF-15-04-0655-09za, MRF-15-04-0704-15b, MRF-15-06-1106-17z, each of which was received at Step III on January 27, 2016 (DE 1 at 31, DE 23-2 at 17);

- Plaintiff's January 26, 2016 attempt to mail the Step III grievance in MRF-15-05-0770-03f – which concerned closed captioning – to the MDOC Director's Office, which was received at Step III on February 1, 2016 (DE 1 at 32, DE 23-2 at 16, 48);

- Contact and/or communication with prisoner Christopher Snow, consistent with the Director's Office Memorandum concerning prisoner-to-prisoner mail (DE 1 at 38-39); and,

- Attempts to send expedited legal mail to MDOC Director Heyns and Attorney Eric Matwiejczyk in (a) new case(s) (DE 1 at 29-30.)

(DE 1 at 6-7, 17, 19; *see also* DE 19, DE 27 at 29-30, 34-37.)

### b.    42 U.S.C. § 1997e(a)

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are

7

available are exhausted."  42 U.S.C.A. § 1997e(a).  In his complaint, Plaintiff

represents that he "fully exhausted all grievances through Step III to the

director[,]" although he also reserves the right "to address exhaustion at such time

[as] the Attorney General opposes [his] exhaustion requirement."  (DE 1 at 9-11.)

This is appropriate, considering the Supreme Court's conclusions that "failure to

exhaust is an affirmative defense under the PLRA," and that "inmates are not

required to specially plead or demonstrate exhaustion in their complaints."  *Jones*

*v. Bock*, 549 U.S. 199, 216 (2007).

### c.    Potentially relevant MDOC grievances

While incarcerated at MRF, Plaintiff pursued eighteen (18) MDOC

Grievances through Step III.  (DE 23-2 at 14-18.)  It seems that only a few of these

mention the Defendants in this case and concern legal mail and/or access to the

courts:

- **MRF-15-04-0704-15b**, which was received at Step I on April 20, 2015, concerned an April 10, 2015 incident, when ARUS S. Williams allegedly denied Plaintiff an "opportunity to process [his] legal mail[.]"  The Step I grievance response is signed by Jenkins-Grant and Stephenson, and the Step II grievance response is signed by Haas. (DE 23-2 at 93-97.)[5]

- **MRF-15-05-0955-17z,** which was received at Step I on May 29, 2015, concerned a May 18, 2015 incident, when Plaintiff contends

---

[5] Plaintiff has since declared that he made a typographical error in using "S. Williams" instead of "C. Williams."  (DE 27 at 25 ¶ 7.)  Still, it appears that this grievance was adjudicated as to "M. Williams," as the grievance response mirrors the allegations in Plaintiff's complaint.  (DE 23-2 at 96-97, DE 1 at 7.)

that ARUS Williams "has now refused to process [his] legal mail . . . in retaliation for [his] filing previous misconduct grievances against her." Here, too, the Step I grievance response is signed by Jenkins-Grant and Stephenson, and the Step II grievance response is signed by Haas. (DE 23-2 at 102-106.)

- **MRF-15-06-1106-17z**, received at Step I on June 18, 2015, concerned ARUS M. Williams's alleged, June 12, 2015 "continued retaliation, dereliction of duty, failure to comply with PD 05.03.118, Prisoner Mail." Again, the Step I grievance response is signed by Jenkins-Grant and Stephenson, and the Step II grievance response is signed by Haas. (DE 23-2 at 88-92.)

These three grievances are the ones upon which Defendants place their focus. (DE 23 at 9-12, 15, 19-20.) However, the Court also notes the following:

- **MRF-15-12-2269-11z**, received at Step I on December 8, 2015, concerned ARUS Williams and the hearing she held on November 13, 2015 regarding the October 30, 2015 confiscation of Plaintiff's television, *as well as an alleged denial of a hearing appeal form*. The Step I response is signed by Jenkins-Grant and Stephenson, and the Step II grievance response is signed by Haas. (DE 23-2 at 65-70.)

Furthermore, in addition to the eighteen (18) grievances appealed through Step III, it also appears that, on March 31, 2015, a grievance that Plaintiff had submitted directly to the Office of Legal Affairs was returned to Plaintiff, along with a cover letter requesting Step I and Step II documents. (*See* DE 23-2 at 26-27.)

### d.    Defendants take a narrow view of the relevant period.

Defendants argue that Plaintiff has failed to properly exhaust his administrative remedies with respect to most of his claims. (DE 23 at 13-21.) Particularly, Defendants contend that Burley "failed to exhaust his administrative

9

remedies *prior to* filing this lawsuit."  (DE 23 at 15-18 (emphasis added).)  In so doing, Defendants do not dispute exhaustion as to those issues raised in MRF-15-06-1106-17z.  (DE 23 at 15.)  However, they claim that Plaintiff "failed to properly exhaust his administrative remedies with respect to the other claims," as they are not "included in a Step I grievance report that was appropriately filed and followed through the Step III appeal."  (DE 23 at 15-16.)  More particularly, in taking the position that Plaintiff "only properly exhausted his claim that Defendant Williams failed to appropriately process legal mail on June 12, 2015[,]" Defendants contend that MRF-15-04-0704-15b and MRF-15-05-0955-17z involve "dates well-before the incidents alleged in the complaint[,]" *i.e.*, April 10, 2015 and May 18, 2015. (DE 23 at 19-21.)

The Court disagrees with such a narrow interpretation of the events underlying Plaintiff's complaint.  True, Defendants correctly observe that Plaintiff described "[t]he dates giving rise" to the complained of conduct as June 12, 2015and "the continued violations occurred on [September 25, 2015] . . . ."  (*See* DE 1 at 6 ¶ B, DE 23 at 6.)  Also, when asked "[w]hat date and approximate time did the events giving rise to your claim(s) occur[,]" Plaintiff answered, in part: "The approximate time period was from June [2015] through March 2016."  (DE 1 at 6 ¶ C.)  However, Defendants own "statement of facts" section omits the "facts underlying your claim(s)" section, which specifically mentions April 10, 2015.

10

(*See* DE 1 at 7 ¶ D.)  No doubt, as noted above, the complaint as drafted has navigational challenges; however, this omission is convenient, given the remainder of Defendants' "statement of facts," which expressly references other text-laden pages of Plaintiff's complaint.  (See DE 23 at 7-9, DE 1 at 8, 18-22.)

Second, even if not expressly mentioned by date within the text of Plaintiff's form complaint:  **(i)** the events of May 18, 2015 would have occurred less than two months after Plaintiff's alleged March 26, 2015 arrival at MRF (DE 1 at 17); **(ii)** Plaintiff's "claims against Defendant George Stephenson" contend that he "did at all time[s] encourage M. Williams to continue denying me access to the Courts[,]" (DE 1 at 21); **(iii)** Plaintiff attached to the complaint a May 18, 2015 letter to Mr. Stephenson, which complains of "a continuing constitutional violation by ARUS M. Williams[,]" (DE 1 at 37); and, **(iv)** Plaintiff attaches a copy of the appeals in MRF-15-05-0955-17z, which concerned a May 18, 2015 incident (DE 1 at 23-24). As the attachments to Defendants' dispositive motion make clear, this grievance concerned Plaintiff's May 18, 2015 submission of a legal expedited form and legal letter.  (DE 23-2 at 105.)  Thus, it is fair to say that the events of May 18, 2015 are not "well-before the incidents alleged in the complaint."  (DE 23 at 19.)  They are well *within* the four corners of the complaint.

Of course, none of the above is a commentary on whether Plaintiff's claims against any Defendant "state a claim upon which relief can be granted[.]"  Fed. R.

Civ. P. 12(b)(6).  As Defendants point out, where a defendant's "only role[] . . . involve[s] the denial of administrative grievances or the failure to act[,]" he or she "cannot be liable under § 1983."  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  (*See also* DE 23 at 20.)[6]  It is only to say that Defendants have not shown that "[s]ummary judgment is warranted with respect to most of Burley's claims due to his failure to properly exhaust his [available] administrative remedies with respect to them[,]" at least, not if the relevant time-frame is properly identified.  (DE 23 at 13; *see also* DE 29 at 6.)

> **e.    Plaintiff substantiates his claim that administrative remedies were unavailable to him with respect to certain grievances.**

Plaintiff claims that Defendant Williams "did make the grievance process unavailable as to prevent me from duly exhausting my administrative remedies as a precursor to file a civil complaint."  (DE 1 at 6 ¶ B.)  Then, in his response to Defendants' dispositive motion, Plaintiff contends that Defendants made "the

---

[6] At a minimum, the first sentences of Plaintiff's "claims against Warden Haas" and "claims against Defendant George Stephenson" mention acquiescing and/or encouraging M. Williams denial of Plaintiff's access to the Courts.  (DE 1 at 20-21.)  Similarly, Plaintiff's "claims against Defendant Jenkins-Grant" allege that she "did impede an investigation into the illegal activities of her personal friend, M. Williams, where she refused to conduct any type of meaningful investigation as PD 03.02.130 mandates."  (DE 1 at 22; *see also* DE 1 at 9.)  To the extent Plaintiff's claims against Jenkins-Grant, Stephenson, and Haas are based upon their Step I and Step II grievance responses, such claims would not survive a motion to dismiss.

grievance process unavailable." (DE 27 at 11.) Specifically, Plaintiff alleges that Grievance Coordinator Taylor "refused to permit plaintiff [an] opportunity to advance a grievance against either Defendant Haas or Stephenson." (DE 27 at 11; *see also* DE 27 at 13.)

In their reply, Defendants point out that "[t]he Sixth Circuit requires some *affirmative efforts* to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 223 (6th Cir. 2011) (quotations and citation omitted) (emphasis added). This would be convincing, if Plaintiff had done "nothing." *Napier*, 636 F.3d at 223. Here, Burley has made the case that he "did *something*." (*Id*. at 224 (emphasis in original).) Attached to Plaintiff's response are a host of exhibits, including Plaintiff's February 2, 2019 declaration, which was signed under penalty of perjury, within which he mentions difficulty he had with the grievance process, including the allegation that he "attempted to file a grievance with . . . Taylor, however, [she] would not permit me to file either one against Haas or Stephenson." (DE 27 at 24-26 ¶¶ 3, 10.) In addition, Plaintiff attaches: **(i)** the purportedly unprocessed grievances he completed as to Haas and Stephenson; **(ii)** a copy of his April 8, 2015 letter to Stephenson regarding prisoner-to-prisoner mail; and, **(iii)** another copy of his June 14, 2015 letter to Stephenson and Haas. (DE 27 at 27-30, DE 1 at 33.)

Defendants also correctly note that MDOC PD 03.02.130 ("Prisoner/Parolee Grievances") "provides for the filing of a Step II appeal in the event no response is received at Step I." (DE 29 at 6.) *See* MDOC PD 03.02.130, effective Mar. 18, 2019, ¶ DD. However, Plaintiff has declared that Taylor would not permit him to file his grievances against Haas and Stephenson, nor would Taylor give him a receipt. (DE 27 at 24-25 ¶¶ 3, 10.) Not only does the policy directive provide that "[a]ll grievances and appeals shall be date stamped upon receipt[,]" but also it provides that "[a]fter receipt of the grievance, the Grievance Coordinator shall determine if the grievance should be rejected pursuant to this policy." MDOC PD 03.02.130 ¶¶ T, Y. Defendants do not appear to argue that these grievances were rejected under the MDOC's grievance policy. *See*, *e.g.*, MDOC PD 03.02.130 ¶ J.

As such, Defendants have not convincingly addressed Plaintiff's claim that the administrative grievance procedure was unavailable to him with respect to his purported grievances against Defendants Haas and Stephenson, each of which was purportedly submitted in June 2015. (DE 27 at 27-28.) In other words, there is a "genuine dispute as to a[] material fact . . . ." Fed. R. Civ. P. 56(a).

### f.    Still, the Court should not order a bench trial on the exhaustion dispute.

Plaintiff's February 12, 2019 motion for a bench trial on the exhaustion dispute alternatively seeks a finding that he "properly exhausted his grievance as to all Named Defendants[.]" (DE 26 at 2, 4.) Defendants respond that a bench trial is

14

unnecessary, as "[n]o question of fact exists warranting a bench trial."  (DE 29 at 6.)

As an initial matter, the Court acknowledges that Defendants filed a jury demand, which pre-dates Plaintiff's request (DE 17), but also acknowledges, as Plaintiff points out, that factual disputes regarding exhaustion of administrative remedies may be addressed by a bench trial.  (DE 26 at 4.)  *See Lee v. Freeman*, No. 16-14162, 2017 WL 4158794, at *6 (E.D. Mich. Aug. 25, 2017) ("there is a question of fact regarding whether plaintiff was thwarted under *Ross [v. Blake,* 136 S.Ct. 1850 (2016)] from exhausting his administrative remedies based on the alleged threats to his personal safety.  Thus, this matter will need to [be] resolved via bench trial.") (Davis, M.J.), *report and recommendation adopted*, No. 16-14162, 2017 WL 4150789 (E.D. Mich. Sept. 19, 2017) (Cohn, J.); *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015) ("the disputed issues of fact regarding exhaustion under the PLRA presented a matter of judicial administration that could be decided in a bench trial.") (footnote omitted).  *See also Alexander v. Calzetta, et al.*, No. 2:16-CV-13293, 2018 WL 8345148, at *6 (E.D. Mich. Nov. 30, 2018) (Patti, M.J.), *report and recommendation adopted sub nom. Alexander v. Calzetta*, No. 16-CV-13293, 2019 WL 1011106 (E.D. Mich. Mar. 4, 2019) (Goldsmith, J.).

However, the Court reads Plaintiff's motion for a bench trial on the exhaustion dispute as one resisting a conclusion that Plaintiff failed to exhaust his available administrative remedies, as Plaintiff contends that: **(i)** "the grievance process was rendered unavailable by the Grievance Coordinator . . . Taylor against both Stephenson and Haas[;] and, **(ii)** "Taylor refused to process said grievance and further refused to provide Plaintiff Burley a receipt." (DE 26 at 1 ¶¶ 1-2; *see also* DE 26 at 3-4.) Given the foregoing conclusions that Defendants have taken too narrow a view of the relevant period and that they have not convincingly addressed Plaintiff's claim about the availability of administrative remedies with respect to his purported grievances against Haas and Stephenson, Defendants have not shown their entitlement to summary judgment on the exhaustion issue. In other words, they have failed to meet their burden. As such, the Court need only deny Defendants' motion for summary judgment on this basis and may proceed with Plaintiff's claims against Defendants on the merits.

> **2.    Plaintiff should be permitted to clarify his claim that Defendant Williams denied him access to the courts.**

> **a.    Plaintiff's First Amendment access to courts claims**

The many references in the Complaint to "access to the courts" make clear that Plaintiff's claims are based, at least in part, on his First Amendment right "to petition the Government for a redress of grievances." (*See*, *e.g.*, DE 1 at 4 ¶ B, DE 1 at 6 ¶ B, DE 1 at 7 ¶ D, DE 1 at 8 ¶ V, DE 1 at 10 ¶ E2.) In particular, Plaintiff

16

refers to:  **(a)** his state court criminal case, Case No. 04013795-FC-A (Genesee County); **(b)** his "right to seek consideration for appellate review of [his] sentence[;] **(c)** his attempt to seek commutation of his sentence from Governor Snyder and Senator Levin, perhaps the subject of MRF-15-06-01106-017z; **(d)** *Burley v. Leslie, et al.*, 1:13-cv-00599-RJJ-RSK (W.D. Mich.); **(e)** an attempt or attempts to address "non-accommodation for [his] hearing disability" under the Americans with Disabilities Act (ADA); and, **(f)** an attempt or attempts to send expedited legal mail in a new case(s).[7]  (DE 1 at 17-19, 25-27, 29-30; DE 23-2 at 91.)

### b.    Fed. R. Civ. P. 12(b)(6)

Defendants assert that Plaintiff's "claim that Defendant Williams denied him access to the Courts" is not cognizable.  (DE 23 at 21-24.)  Given Defendants' positions that Plaintiff has "fail[ed] to state a cognizable claim[,]" and that, as to Plaintiff's access to courts claim against Defendant Williams, "the allegations in the complaint – even if true – a[r]e insufficient . . . [,]" I presume Defendants are arguing that Plaintiff has failed to "state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  (DE 23 at 2, 4, 21, 24.)

---

[7] MRF-15-05-0770-03f concerned closed captioning; MRF-15-08-01431-012d concerned Plaintiff's hearing aid; MRF-16-02-0310-28I concerned an alleged failure "to accommodate [his] hearing disability for religious services;" and, MRF-16-03-00589012z concerned allegedly worsening vision.  (DE 23-2 at 48, 84, 110, 36.)

"Though prisoners do have a constitutional right to meaningful access to the courts, which is grounded in many sources, in order to adequately state a claim for a denial of access to courts, a prisoner must set forth actual prejudice to pending litigation that challenges his conviction or conditions of confinement." *Clark v. Johnston*, 413 F. App'x 804, 816 (6th Cir. 2011) (citing *Lewis v. Casey,* 518 U.S. 343, 351–55 (1996)). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005) (citing *Jackson v. Gill,* 92 F. App'x 171, 173 (6th Cir.2004) (unpublished)).

### c.   The parties are at odds about actual prejudice.

At the heart of Defendants' argument is whether Plaintiff suffered "actual prejudice." (DE 23 at 5, 21, 23.) Defendants contend that Plaintiff's "alleged prejudicial events" are insufficient "to allege actual injury under federal court precedent." (DE 23 at 22, DE 1 at 17-18.) Also, seemingly referring to Plaintiff's attempts to communicate with Snow and/or another witness in *Burley v. Leslie, et al.*, 1:13-cv-00599-RJJ-RSK (W.D. Mich.) (prison condition), Defendants contend that: **(a)** "[t]his issue was not raised in . . . any grievance filed at MRF[;]" **(b)** Snow is on the February 24, 2017 proposed joint final pretrial order in *Burley v. Leslie, et al.*, 1:13-cv-00599-RJJ-RSK (W.D. Mich.); and, **(c)** Plaintiff "was

represented by counsel" at the time of the March 7, 2017 stipulated order

dismissing the case in its entirety with prejudice.  (DE 23 at 22-23; *see also* DE 29

at 5, DE 31 at 3-6.)  This appears to be correct on the face of the docket for *Burley*

*v. Leslie, et al.*, 1:13-cv-00599-RJJ-RSK (W.D. Mich.), which indicates that

Plaintiff initiated the lawsuit *in pro per* on June 3, 2013 but that Attorney Solomon

M. Radner entered an appearance on July 11, 2016 and that Attorney Keith Louis

Altman entered an appearance on December 22, 2016.

Plaintiff contends that his access to courts claim against Defendant M.

Williams "is a valid cognizable claim . . . [,]" for which he has "demonstrated

prejudice to pending and/or anticipated litigation."  (DE 27 at 13-20.)  In support

of this argument, Plaintiff refers to, *inter alia*:

- Frustration "in bringing a civil rights violation against the MDOC[,]" presumably referring to the instant lawsuit, which was filed on July 17, 2018 but which Plaintiff claims he intended to do in late November 2015.

- His attempt to solicit a lawyer to assist him in filing a disability discrimination action against the MDOC, which the Court assumes is a reference to *Burley v. Quiroga, et al.* (2:16-cv-10712-GCS-PTM), which Plaintiff intended to file in early 2015, which was actually filed on February 25, 2016 and contained an ADA claim, and wherein several defendants were terminated by way of this Court's March 6, 2017 order.

- Fear of further retaliation if he filed a motion to re-open his habeas case, *Burley v. Prelesnik* (2:11-cv-11258-AC-MJH).

- The effect of a lack of access to witness Snow's testimony upon the resolution of *Burley v. Leslie, et al.*, 1:13-cv-00599-RJJ-RSK (W.D. Mich.), including counsel's preparedness and the settlement amount.

- Interference with his ability to exhaust Step III grievances, presumably a reference to the purportedly unprocessed grievances he completed as to Haas and Stephenson in June 2015 (DE 27 at 27-28).

- Impeding his ability to correspond with Attorney Eric Matwiejczyk about filing a state court petition for judicial review of a misconduct ticket for disobeying a direct order, which Plaintiff subsequently filed in St. Clair County, but regarding which the Attorney General filed a June 11, 2015 "motion to change venue," after which Plaintiff claims his petition was dismissed.[8]

(DE 27 at 14-20.)  Meanwhile, on April 2, 2015, Plaintiff was deemed ineligible for MRF's Legal Writer Program, as he possessed a High School Diploma and did not "present a verifiable claim of a physical or mental disability[.]"  (DE 27 at 15, 39.)  Moreover, his attached declaration mentions, *inter alia*, seeking review of his state court criminal case (04013795-FC-A (Genesee County)).  (DE 27 at 24-26 ¶¶ 2, 6, 8.)

---

[8] Plaintiff further claims he cannot refile the petition for judicial review, as it is beyond the related 60-day statute of limitations.  (DE 27 at 19.)  *See* M.C.R. 7.119 ("Judicial review of a final decision or order shall be by filing a claim of appeal in the circuit court within 60 days after the date of mailing of the notice of the agency's final decision or order. If a rehearing before the agency is timely requested, then the claim of appeal must be filed within 60 days after delivery or mailing of the notice of the agency's decision or order on rehearing, as provided in the statute or constitutional provision authorizing appellate review.").

On the issue of actual prejudice, Defendants reply that "there is no support for a finding that [Plaintiff] had a meritorious claim in either" *Burley v. Quiroga, et al.* (2:16-cv-10712-GCS-PTM) or an attempt to re-open *Burley v. Prelesnik* (2:11-cv-11258-AC-MJH).  (DE 29 at 4.)  Moreover, Defendants point out that Plaintiff "made several filings in pending cases . . . [,]" such as *Burley v. Daniels, et al.*, 1:15-cv-00570-RHB-PJG (W.D. Mich.) (filed June 4, 2015) and *Burley v. Cooley, et al.*, 1:15-cv-00320-RJJ-RSK (W.D. Mich.) (filed Mar. 23, 2015).  (DE 29 at 5.)

In his sur-reply, Plaintiff explains and illustrates that the retainer agreement with Attorney Solomon M. Radner was not fully executed until July 7, 2016.  (DE 31 at 3-6.)  Thus, Plaintiff seems to clarify that he was not represented in Case No. 1:13-cv-00599-RJJ-RSK during "the time where [he] allege[s] unconstitutional behavior."  (DE 31 at 4.)

### d.   Summation

The above review of the parties arguments illustrates that Plaintiff paints his prejudice arguments with a wider brush than the one used by Defendants.  Here, it is important to note Plaintiff's statement that, "[s]hould this Court find that I neglected to adequately marshal[] allegations relating to the prejudice showing, I would ask the Court to permit a more definite statement."  (DE 27 at 19.)  See Fed. R. Civ. P. 12(e) ("Motion for a More Definite Statement.").  "Pursuant to its supervisory power, a court may *sua sponte* order a more definite statement under

Fed.R.Civ.P. 12(e)." *Maybin v. Booker*, No. 09-13755, 2011 WL 161888, at *2

n.3 (E.D. Mich. Jan. 19, 2011) (Whalen, M.J.).  Given Plaintiff's lengthy litigation

history, and his current claims of interference with his First Amendment right of

access to the courts, the Court should permit Plaintiff an opportunity to clarify his

access to courts claims, preferably by way of an amended complaint that retains

the scope of his original complaint.

> **3.** **The opportunity to clarify his claims should also be applied to Plaintiff's claim that Michelle Williams-Ward retaliated against him and to any other claims within the complaint.**

Plaintiff contends that Defendant Michelle Williams-Ward retaliated against

him, *e.g.*, for informing ARUS S. Williams that M. Williams "would not give

[him] the location or approved form of witness Christopher Snow[,]" and for

"filing grievances against her . . . ."  (DE 1 at 17-19; *see also* DE 1 at 22-23.)

Defendants' motion for summary judgment does touch upon Plaintiff's

retaliation claim(s).  Defendants acknowledge many of the retaliation allegations

within Plaintiff's complaint.  (DE 23 at 8, DE 1 at 18-19.)  Also, they recognize

that the Step I grievances in MRF-15-06-1106-17z and MRF-15-05-0955-17z

concern allegations of retaliation.  (DE 23 at 9-11; *see also* DE 23-2 at 105.)

Furthermore, Defendants admit that Plaintiff's "allegations of a retaliatory

motive," presumably for Williams' alleged refusal to process Plaintiff's legal mail

on June 12, 2015, are raised in Step I of MRF-15-06-1106-17z, which is dated June

15, 2015 and was received at Step I on June 18, 2015.  (DE 23 at 15, DE 23-2 at

17, 91.)  However, as noted above, Defendants take the position that MRF-15-05-

0955-017z concerns a date "well-before the incidents alleged in the complaint."

(DE 23 at 19.)  As previously illustrated, the events of May 18, 2015 are well

*within* the four corners of the complaint.

Thus, Plaintiff appropriately points to MRF-15-05-0955-17z when

responding that Defendants "failed to address M. Williams['] retaliatory

conduct[.]"  (DE 27 at 20-21.)  Moreover, Plaintiff addresses the First Amendment

retaliation elements set forth in *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.

1999) (protected conduct, adverse action and causal connection).  (*Id*.)

Defendants do not address retaliation in their reply.  (DE 29.)  Accordingly,

while the Court should presently decline Plaintiff's invitation to "find that the

actions of Defendant M. Williams clearly show[] retaliatory conduct . . . [,]" (DE

27 at 21), it should still determine that Defendants are not entitled to dismissal of

any of Plaintiff's retaliation claims for an alleged failure to "state a claim upon

which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  Of course, if the court

chooses to permit Plaintiff to file an amended complaint to clarify his access to

Courts claims, nothing would prevent the Court from permitting Plaintiff to clarify

any of his other claims – retaliation or otherwise – within the same amended complaint.[9]

### E.    Conclusion

In sum, Defendants contend that "[t]he only claim remaining in this lawsuit," should be "Burley's allegation that Defendant Williams retaliated against him through processing legal mail on June 12, 2015."  (DE 23 at 24.)  However, for the reasons stated above, the Court should conclude that Defendants have not shown their entitlement to dismissal for failure to exhaust as to any of Plaintiff's claims and should further permit Plaintiff an opportunity to file a more definite statement through an amended complaint which clarifies Plaintiff's claims, consistent with the concerns and ambiguities raised in this report.

Accordingly, the Court should **DENY** Defendants' January 23, 2019 motion for partial summary judgment (DE 23) and **DENY** Plaintiff's February 12, 2019 motion for a bench trial on the exhaustion dispute (DE 26).

## III.   PROCEDURE ON OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

---

[9] Should the Court permit Plaintiff the opportunity to file a more definite statement by way of an amended complaint, then Plaintiff should be particularly attentive to Fed. R. Civ. P. 8(a) ("Claim for Relief.") and Fed. R. Civ. P. 10 ("Form of Pleadings").  Laying out his various claims in separate counts would be particularly helpful.

24

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: May 31, 2019                           s/*Anthony P. Patti*
                                              Anthony P. Patti
                                              UNITED STATES MAGISTRATE JUDGE

**<u>Certificate of Service</u>**

I hereby certify that a copy of the foregoing document was sent to parties of record on May 31, 2019, electronically and/or by U.S. Mail.

s/Michael Williams       
Case Manager for the
Honorable Anthony P. Patti
