UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD DONALD BURLEY,

            Plaintiff

v.

MICHELLE WILLIAMS-WARD,
RANDALL HAAS,
GEORGE STEPHENSON,
REGINA JENKINS-GRANT, and
CARYLON WILLIAMS, *et al*.

            Defendants.

_____/

Case No. 2:18-cv-12239
District Judge George Caram Steeh
Magistrate Judge Anthony P. Patti

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART MDOC DEFENDANTS HAAS, STEPHENSON & JENKINS-GRANT'S MOTION TO DISMISS (ECF NO. 51)

I.    **RECOMMENDATION:**  The Court should **GRANT IN PART AND DENY IN PART** MDOC Defendants Haas, Stephenson & Jenkins-Grant's motion to dismiss (ECF No. 51).  If the Court agrees with this recommendation, then the claims against Defendants M. Williams-Ward and C. Williams and the First Amendment retaliation claim against Defendants Stephenson and Haas would remain.

II.    **REPORT:**

    A.    **Background**

Edward Donald Burley is currently incarcerated at the Michigan Department of Corrections (MDOC) Ionia Correctional Facility (ICF).  (ECF No. 55.)[1]  His claims that he practices Judaism and has a bilateral hearing impairment are particularly noteworthy.  (ECF No. 49, PageID.548 ¶ 3, 559 ¶ 34, 563-565 ¶¶ 49, 50, 53.)

On July 17, 2018, while incarcerated at the MDOC's Parnall Correctional Facility (SMT), Burley filed this lawsuit against several Defendants associated with the MDOC's Macomb Correctional Facility (MRF).  (ECF No. 1, PageID.2-3.)[2]  MDOC Defendants Michelle Williams-Ward, Randall Haas, George Stephenson, Regina Jenkins-Grant and Carylon Williams are each represented by Michigan's Attorney General.  (ECF No. 16.)

---

[1] It seems that Plaintiff arrived at ICF in January 2020.  (ECF No. 55.)  Since then, Plaintiff has filed an April 1, 2020 motion to appoint counsel (ECF No. 56), and a related April 24, 2020 filing (ECF No. 57), which alleges, *inter alia*, that he is being denied access to his legal materials and the law library.  These were filed after briefing on the instant motion closed and will be addressed under separate cover.

[2] By a letter filed January 16, 2019, Plaintiff asks the Court whether the Undersigned's case manager, Michael L. Williams, is related to Defendant Michelle Williams-Ward.  (ECF No. 25.)  Based on Defendants' names as set forth in counsel's appearance (ECF No. 16), the Court suspects that Plaintiff's question also applies to Defendant Carylon Williams.  Mr. Williams confirms that he is not related to Michelle Williams-Ward, and that he does not know a Carylon Williams. While the Court understands Plaintiff's concern, Williams is one of the most common surnames in America.

The MDOC Defendants filed a motion for partial summary judgment.  (ECF No. 23.)  My May 31, 2019 report recommended that the Court deny this motion, which the Court did on July 1, 2019.  (ECF No. 38; ECF No. 44.)  Among other things, the Court noted:  "Burley may within twenty (20) days file an amended complaint which contains more definite statements of the claims asserted against each defendant in light of the observations in the MJRR."  (ECF No. 44, PageID.506.)[3]

## B.    Operative Pleading

On August 12, 2019, while incarcerated at the MDOC's Oaks Correctional Facility (ECF) and with leave from the Court, Plaintiff filed an "amended civil complaint/more definite statement."  (ECF Nos. 47 & 49.)  While the caption of the complaint suggests other defendants, the "Parties" section of the complaint names several MRF Defendants:  (1) Assistant Resident Unit Manager (ARUS) Michelle Williams-Ward; (2) Warden Randall Haas; (3) Deputy Warden George Stephenson; (4) Resident Unit Manager (RUM) (Regina) Jenkins-Grant; and (5) ARUS Carolyn (Carylon) Williams.  (ECF No. 49, PageID.549-551 ¶¶ 12-15.)

Plaintiff's three causes of action are based upon either his First Amendment right "to petition the Government for a redress of grievances[,]" or his Fourteenth

---

[3] This order was entered by Judge Cohn.  (ECF No. 44.)  However, upon Judge Cohn's retirement, the case was reassigned to Judge Steeh.  *See* Administrative Order 20-ao-003 (E.D. Mich. Jan. 2020).

Amendment right to "equal protection of the laws."  (*Id*., PageID.556-565.)  His prayer for relief is multi-faceted, but it includes requests for compensatory, punitive and presumed damages.  (*Id*., PageID.565-566.)

### C.    Instant Motion

On September 3, 2019, three of the Defendants (Haas, Stephenson & Jenkins-Grant) filed a motion to dismiss, the sole basis for which is that Plaintiff has failed to sufficiently allege that Defendants Haas, Stephenson, and Jenkins-Grant "were personally involved in any unconstitutional conduct."  (ECF No. 51, PageID.579.)

Plaintiff filed his response on September 11, 2019.  (ECF No. 54.)

### D.    Fed. R. Civ. P. 12

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true."  *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of

the elements of a cause of action . . ."). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him . . . . [N]either may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).[4]

---

[4] *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

### E.     Discussion

#### 1.     Allegations against Haas, Stephenson, and Jenkins-Grant

##### a.     Identification of parties

To determine whether Plaintiff's operative pleading sufficiently alleges that Defendants Haas, Stephenson, and Jenkins-Grant were "personally involved in any unconstitutional conduct[,]" (ECF No. 51, Page ID.579, 583), the Court begins with the list of "Parties," which identifies:

- Haas as MRF's Warden and also alleges that Plaintiff had personal communication with him on or about March 30, 2015 and June 12, 2015, each time informing Plaintiff that he would "check it out" or "check into it[;]"

- Stephenson as a Deputy Warden and also alleges, *inter alia*, that Stephenson "stated he would check it further and get down to the problem[,]" "agreed that he would personally check [Plaintiff's] complaint out[,]" and "assured [Plaintiff] he would further investigate the matter and find a resolution[;]" and,

- Jenkins-Grant as a Resident Unit Manager (RUM) and also alleges, *inter alia*, that Jenkins-Grant "failed to assure [he] was permitted to send out legitimate legal mail . . ." authorized by MDOC PD 05.03.118.

(ECF No. 49, PageID.549-551 ¶¶ 12-15.)

##### b.     Statement of facts

Together with the attachments to the original complaint, the facts underlying Plaintiff's amended complaint concern the alleged events of March 2015 to mid-2016 and present the following timeline:

6

- On March 19, 2015, Plaintiff was authorized to engage in prisoner-to-prisoner mail with Christopher Snow, apparently in association with *Burley v. Leslie, et al.*, Case No. 1:13-cv-00599-RJJ-RSK (W.D. Mich.).  (*See also* ECF No. 1, PageID.38-39.)

- On March 26, 2015, Plaintiff arrived at MRF.  Shortly thereafter, Plaintiff allegedly informed M. Williams-Ward and C. Williams of this authorization.

- On March 30, 2015, C. Williams and M. Williams-Ward refused to give Plaintiff Snow's address.

- On April 10, 2015, M. Williams-Ward denied Plaintiff an opportunity to process his legal mail (regarding which he filed grievance MRF-15-04-00704-015b, although Plaintiff mistakenly listed S. Williams instead of M. Williams) and refused to afford Plaintiff notary service for a legal document.[5]

- On May 14, 2015, Defendant Jenkins-Grant rendered the Step I response in MRF-00704.  On November 9, 2015, Warden Haas signed the Step II response in MRF-704, and it was pursued through Step III.  (ECF No. 1, PageID.35-36.)

- On May 18, 2015, M. Williams-Ward refused to process Plaintiff's legal mail and retaliated against him, regarding which he filed a grievance (MRF-15-05-00955-017z).[6]

---

[5] The MDOC policy directive regarding Prisoners' Access to the Courts provides that "[a]ll prisoners shall have access to a notary public."  MDOC PD 05.03.116 ¶ G (effective July 21, 2008.  (*See also* ECF NO. 49, PageID.567-569.)

[6] Perhaps this alleged refusal is synonymous with Plaintiff's attempts to secure legal postage for a new case—thus the absence of a case number on his MDOC Disbursement Authorization forms—to be mailed to MDOC Director Daniel Heyns and Attorney Eric Matwiejczyk (P46222).  (ECF No. 1, PageID.29-30; ECF No. 49, PageID.556, 562 ¶¶ 24, 44.)

7

- Warden Haas signed the Step II response in MRF-00955, and it was pursued through Step III.  (ECF No. 1, PageID.23-24.)

- By a letter dated May 18, 2015, Plaintiff wrote to Stephenson about ARUS M. Williams.  (ECF No. 1, PageID.37.)  Plaintiff complained, *inter alia*, that "[s]he only harasses Caucasian prisoners."  (*Id*.)

- On June 12, 2015, M. Williams-Ward refused to process Plaintiff's legal mail disbursements (to then-MDOC Director Heyns, then-U.S. Senator Levin, and then-Governor Snyder), which purportedly concerned Case No. 04-013795-FC (Genesee County), *i.e.*, his state court criminal case.  (*See* ECF No. 1, PageID.25-27.)

- On or about June 14, 2015, Plaintiff wrote to Warden Haas regarding continued denial of access to courts and violations of policy by ARUS M. Williams.  (ECF No. 1, PageID.33.)  The correspondence was received by the Deputy Warden's Office on June 17, 2015, and, in a June 18, 2015 form reply, MRF Deputy Warden Stephenson checked, "Your concern(s) have been noted[,]" and further commented, "Please be advised that you need to adhere to policy when processing legal mail." (ECF No. 1, PageID.34.)

- On June 15, 2015, Plaintiff filed a grievance (MRF-2015-06-1106-17z) which concerned his June 12, 2015 attempt to send 3 legal mail parcels.  (*See also* ECF No. 23-2, PageID.91.)

- In mid-2015, the named Defendants prevented Plaintiff from filing what eventually became *Burley v. Williamson, et al.*, Case No. 2:16-cv-10712-GCS-PTM (E.D. Mich.) (filed Feb. 25, 2016, stipulated order of dismissal June 2, 2020).

- On September 25, 2015, Plaintiff attempted to send Step III grievance appeals, specifically Step III grievances in MRF-15-06-01174-12d4 and MRF-15-07-012040-12I, each of which was received at Step III on October 1, 2015 (ECF No. 1, PageID.28; *see also* ECF No. 23-2, PageID.131).

- In early 2016, Williams or Williams-Ward held his legal mail for over a week, which caused him to miss a court deadline and regarding which he filed a grievance – perhaps MRF-16-01-0115-19a, which was received at Step I on January 21, 2016. (ECF 23-2, PageID.127.)

- On January 22, 2016, Plaintiff attempted to mail grievance appeals in MRF-15-04-0655-09za, MRF-15-04-0704-15b, MRF-15-06-1106-17z, each of which was received at Step III on January 27, 2016. (ECF No. 1, PageID.31; *see also* ECF No. 23-2, PageID.130.)

- On January 26, 2016, Plaintiff attempted to mail the Step III grievance in MRF-15-05-0770-03f—which concerned closed captioning—to the MDOC Director's Office, which was received at Step III on February 1, 2016 (ECF No. 1, PageID.32; *see also* ECF No. 23-2, PageID.129, 197).

- In mid-2016, Plaintiff was transferred, seemingly to Thumb Correctional Facility (TCF), allegedly in retaliation for filing a grievance, perhaps MRF-0115.

(ECF No. 49, PageID.551-556 ¶¶ 16-25; *see also* ECF No. 38, PageID.444-445.)[7]

---

[7] The Court recognizes that, "[n]ormally, an amended complaint supersedes the original complaint." *Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 456 n.4 (2009). Nonetheless, Plaintiff's original complaint was accompanied by seventeen pages of exhibits (fifteen of which are MDOC forms/grievances and two of which are Plaintiff's hand-written letters), none of which were re-attached to the amended complaint. (*See* ECF No. 1, PageID.23-39.) Each of the seventeen exhibits is referenced herein; however, of particular note are the references to Plaintiff's written complaints to Stephenson and Haas (about M. Williams) and Stephenson's response, which shed light on the circumstances of his claims against them. (ECF No. 1, PageID.33, 34, 37.) There is at least some authority for considering them here. *See, e.g.*, *Jeffrey M. Brown Assocs., Inc. v. Rockville Ctr. Inc.*, 7 F. App'x 197, 202 (4th Cir. 2001) ("We note that although we do not herein

### c. Claims for relief

Notably, Haas, Stephenson and Jenkins-Grant are specifically mentioned within the "Claims for Relief." (ECF No. 49, PageID.556-565.) In the First Amendment access to courts claim (Count I), Plaintiff alleges that he "was severely hindered and obstructed by state officials (M. Williams, C. Williams, Haas, Stephenson, and Jenkins) from pursing credible claims in both his criminal and civil pursuits[,]" including *Burley v. Williamson, et al.*, Case No. 2:16-cv-10712-GCS-PTM (E.D. Mich.). (ECF No. 49, PageID.558 ¶ 32.)

In the First Amendment retaliation claim (Count II), Plaintiff makes specific allegations against M. Williams-Ward and C. Williams. (ECF No. 49, PageID.558-560 ¶¶ 33-35; *see also* ECF No. 49, PageID.562 ¶¶ 43-45.) In addition, he alleges that:

- He met with Stephenson in his office and brought the retaliatory acts to his attention. Stephenson said he would personally get involved, but he also "further endorsed the actions of both" M. Williams-Ward and C. Williams. Also, Stephenson threatened Plaintiff with an up-north transfer if he "continued to exercise [his] right to the Courts."

- Jenkins-Grant retaliated against Plaintiff by covering up M. Williams-Ward's retaliatory acts, seemingly by refusing to "conduct a reasonable investigation into the actions" of which

---

consider the *allegations* of the original complaint, we *may,* and do, consider certain *exhibits* attached to the original complaint that are "integral to and explicitly relied on in the [amended] complaint," and whose authenticity is not challenged . . . .").

sa

Plaintiff complained.  Plaintiff insists his claim is not based upon Jenkins-Grant's responses to Plaintiff's grievances against M. Williams-Ward and C. Williams.

- Plaintiff spoke with Haas "on at least two (2) occasions in the Chow Hall . . . [,]" presumably about M. Williams-Ward and C. Williams, and Haas "stated he would get involved and achieve a resolve."  He alleges that Haas "encouraged and/or acquiesced in the retaliatory acts" of others (again presumably about M. Williams-Ward and C. Williams), "retaliated against me when he authorized my transfer out of MRF in mid-2016[,]" and was "personally and actively involved in all aspects of the retaliation and actual denials of [unspecified] constitutionally protected activities."

(ECF No. 49, PageID.558-563 ¶¶ 36-38; *see also id.*, PageID.555 ¶ 23.)  Plaintiff alleges that M. Williams-Ward, C. Williams, Jenkins-Grant, Haas, and Stephenson violated the express terms and mandates of MDOC PDs 05.03.116 and 05.03.118. (ECF No. 49, PageID.561 ¶¶ 39-41; *see also* ECF No. 49, PageID.548 ¶ 4.)  He also alleges that Defendants C. Williams and M. Williams-Ward, "as well as the rest of the Defendant[s][,]" conspired to deprive "a person with a disability" of his First Amendment right "to petition the Government for a redress of grievances[,]" U.S. Const. amend. I, which substantially and materially prejudiced his current and anticipated cases, as well as "a commutation with the Governor[']s office" and "various legal issues . . . ."  (ECF No. 49, PageID.562 ¶ 45; *see also id.*, PageID. 554-556, 564-565 ¶¶ 23, 25, 52.)[8]

---

[8] To the extent Plaintiff attempts to allege a claim against Grievance Coordinator E. Taylor (ECF No. 49, PageID.563 ¶¶ 42, 46), Taylor is not a Defendant in this

In the <u>Fourteenth Amendment equal protection claim (Count III)</u>, Plaintiff

makes specific allegations against Defendant M. Williams-Ward.  (ECF No. 49,

PageID.563-564 ¶¶ 49-51.)  Moreover, Plaintiff alleges:

> M. Williams, C. Williams, Warden Haas, Stephenson all were actively involved in the intentional discrimination where they impeded and thwarted my right of access to the Courts, denial of access to a civil witness, and did further conspire to continually deprive me of a protected liberty interest (accessing courts, liberty interest in challenging my conviction/sentence, and in anticipated litigations[)]. I specifically allege that the state actors Williams, Haas, Stephenson, Jenkins-Grant intentionally discriminated against me based on my religious affiliation, and person seeking redress to the Government.

(*Id.*, PageID.564-565 ¶ 52.)  Stated otherwise, Plaintiff alleges that all Defendants

"imposed a special burden upon [him][,]" because he "practice[s] Judaism and [is]

a prolific litigator in both the Eastern and Western District Courts."  (ECF No. 49,

PageID.565 ¶ 53.)  Finally, Plaintiff alleges an "alternate theory," *i.e.*, "a class-of-

one equal protection claim[,]" against all Defendants, although this allegation more

specifically takes issue with M. Williams-Ward.  (ECF No. 49, PageID.565 ¶ 54.)

*See*, *e.g.*, *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("Our cases have

recognized successful equal protection claims brought by a 'class of one,' where

---

case.  Plaintiff did not list Taylor in the caption of either the original complaint or the amended complaint.  (ECF No. 1, PageID.1; ECF No. 49, PageID.547.)  *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties; the title of other pleadings, after naming the first party on each side, may refer generally to other parties.").

the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.").  Plaintiff also seems to base his equal protection claim on race, as he alleges that "Defendants did engage in racial discrimination where they permitted African American prisoners to send out legal mail to the Courts, elected officials, endorsed and licensed attorneys . . . ."  (ECF No. 49, PageID.548 ¶ 5.)  Plaintiff's racial identification is "white."  (*See Offender Search*, MICHIGAN DEPARTMENT OF CORRECTIONS, www.michigan.gov/corrections.)

### 2.    Facts versus conclusions

Defendants Haas, Stephenson, and Jenkins-Grant argue that "Burley's amended complaint makes conclusory allegations against [them]."  (ECF No. 51, PageID.585.)  In addressing this argument, it is important to note the following direction from the Supreme Court:  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  In fact, well before the 2007 and 2009 decisions in *Twombly* and *Iqbal*, at least one Court noted:  "we are not to accept inferences drawn by [Plaintiff] if they are unsupported by the alleged facts, nor will we accept purely

legal conclusions masquerading as factual allegations." *Maljack Prods., Inc. v. Motion Picture Ass'n of Am., Inc.*, 52 F.3d 373, 375 (D.C. Cir. 1995).

Defendants specifically argue that the allegations in ¶¶ 21-23 of the operative pleading "are unsupported legal conclusions masquerading as 'facts.'" (ECF No. 51, PageID.585.)  They also argue that Plaintiff "does little more than . . . recite the legal standard to impose liability on a supervisor," and "does not allege that [any of them] personally engaged in any unconstitutional conduct."  (*Id*.)

I agree that many of the allegations within Plaintiff's amended complaint are conclusory in nature, such as blanket allegations that Defendants Haas, Stephenson, and/or Jenkins-Grant:  (a) encouraged, acquiesced in, and/or endorsed the actions of M. Williams-Ward and/or C. Williams (and, in the case of Haas, also Jenkins-Grant); and (b) were "personally and actively involved . . . ."  (*See*, *e.g.*, ECF No. 49, PageID.554-555, 559-560 ¶¶ 21-23, 36-38).  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

However, Plaintiff makes some allegations that are more than conclusory, such as his allegations that he had "face-to-face communications," "personal conversation," or "personal communications" with Haas, Stephenson, and Jenkins-Grant.  (ECF No. 49, PageID.554-555 ¶¶ 21-23.)  Likewise, Plaintiff alleges, *inter alia*, that: (a) he met with Stephenson in his office, and Stephenson threatened him with transfer up north; (b) Jenkins-Grant covered up for M. Williams-Ward and

14

"refused to conduct a reasonable investigation . . . [;]" and, (c) Plaintiff spoke with Haas on at least two occasions.  (ECF No. 49, PageID.558-563 ¶¶ 36-38.)  (*See also* ECF No. 49, PageID.549-551 ¶¶ 12-14.)

Thus, to a certain extent, Plaintiff, as he argues in his response, has sufficiently alleged that "MDOC Defendants Haas, Stephenson, and Jenkins-Grant were personally involved in all aspects of the alleged unconstitutional conduct." (ECF No. 54, PageID.599; *see also id.*, PageID.603-605.)[9]  In other words, the Court should not reject *all* of Plaintiff's claims against these three Defendants on the basis of being conclusory.

### 3.    Alleged failure to act

Defendants Haas, Stephenson, and Jenkins-Grant also argue that "the facts that Burley did plead fail to show a 'plausible' claim for relief."  (ECF No. 51, PageID.586.)  Even assuming as true Plaintiff's allegations that he met with each of them, Defendants Haas, Stephenson, and Jenkins-Grant argue that the allegations, when "coupled with their alleged failure to act[,] [are] insufficient to

---

[9] Plaintiff relies upon *McPherson v. Kelsey*, 125 F.3d 989 (6th Cir. 1997), seemingly to support his claim that Defendants have acquiesced in and waived or forfeited their right to oppose his "alternate supervisor liability argument."  (ECF No. 54, PageID.604.)  This reliance is misplaced, because the waiver discussed in that case concerned plaintiffs' pursuit of their false arrest argument. *McPherson*, 125 F.3d at 995-996.  Here, the only issue to be considered is whether Plaintiff's operative pleading states a claim against Defendants Haas, Stephenson, and/or Jenkins-Grant upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).

impose liability on them."  (*Id*.)  Plaintiff contends that he has alleged "specific

conduct demonstrating that all Defendants were personally involved in the

unconstitutional conduct," and "distinct facts substantiating liability."  (ECF No.

54, PageID.599.)

### a.    *Supervisory liability*

Preliminarily, the Court addresses Plaintiff's "alternate theory of liability,"

*i.e.*, "Haas, Stephenson, and Jenkins-Grant were liable based on superior liability."

(ECF No. 54, PageID.601; *see also id.*, PageID.602.)  According to Plaintiff, his

amended complaint alleges that "the supervisory official personally participated in

the constitutional deprivation or that the supervisory official was aware of

widespread abuses and, with deliberate indifference to the inmate's constitutional

rights, failed to take action to prevent further misconduct."  *Ray v. Caruso*, No. 08-

15208, 2009 WL 2230935, at *3 (E.D. Mich. July 22, 2009) (O'Meara, J., adopting

report and recommendation of Binder, M.J.) (citing *Monell v. New York City Dep't

of Soc. Servs.,* 436 U.S. 658, 691–92 (1978)).  (ECF No. 54, PageID.607.)

If Plaintiff is referring to supervisory liability or liability based upon the

doctrine of *respondeat superior*, it is important to note that:

> . . . § 1983 liability must be based on more than respondeat superior,
> or the right to control employees. *See Hays v. Jefferson County, Ky.*,
> 668 F.2d 869, 874 (6th Cir.1982).  "Thus, a supervisory official's
> failure to supervise, control, or train the offending individual is not
> actionable unless the supervisor "either <u>encouraged</u> the specific
> incident of misconduct or in some other way <u>directly participated</u> in it.

> At a minimum a plaintiff must show that the official at least <u>implicitly</u>
> <u>authorized</u>, <u>approved</u>, or <u>knowingly acquiesced</u> in the unconstitutional
> conduct of the offending officers." *Id.*

*Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (emphases added).  In other

words, "liability under § 1983 must be based on *active* unconstitutional behavior

and cannot be based upon 'a mere failure to act.'"  *Shehee*, 199 F.3d at 300

(emphasis added) (quoting *Salehpour v. University of Tennessee*, 159 F.3d 199,

206 (6th Cir.1998), *cert. denied*, 526 U.S. 1115 (1999)).  *See also Greene v.*

*Barber*, 310 F.3d 889, 899 (6th Cir. 2002) ("Supervisory liability under § 1983

does not attach when it is premised on a mere failure to act; it must be based on

active unconstitutional behavior.") (quotations and citations omitted).

### b.    Personal involvement

Plaintiff contends that Defendants Haas, Stephenson, and Jenkins-Grant are

"personally liable based on personal involvement."  (ECF No. 54, PageID.601.)

However, to the extent that Plaintiff's claims against Haas, Stephenson and/or

Jenkins-Grant concern "the denial of administrative grievances or the failure to

act[,]" they "cannot be liable under § 1983."  *Shehee*, 199 F.3d at 300.  More

specifically, although Plaintiff insists that his claims against Jenkins-Grant are not

based simply on the fact that she responded to his grievances against M. Williams-

Ward and C. Williams (*i.e.*, the May 14, 2015 response in MRF-15-04-00704-015b

(ECF No. 49, PageID.562 ¶ 43), his attack on the reasonableness of Jenkins-

Grant's investigations appears related to her handling of his grievances, which he suggests were categorically denied "without a reasonable investigation[,]" and which the Court assumes is the source of the alleged "cover-up." (ECF No. 49, PageID.548 ¶ 3, 560 ¶ 37.) *See also* MDOC PD 03.02.130 ("Prisoner/Parolee Grievances").

Plaintiff responds that his allegations constitute "more than a mere failure to act claim[,]" and are "clearly shown to be based on active unconstitutional behavior[,]" and he divides this argument into several parts. (ECF No. 54, PageID.605-607.) Preliminarily, Plaintiff seems to contend that the amended complaint's "distinct marshalling of factual content . . . demonstrate[s] [Defendants'] personal involvement and unconstitutional behavior[,]" and the operative pleading "meets the pleading standards for pro se litigants." (ECF No. 54, PageID.605-606 (citing *Haines* and *Iqbal*).) Relatedly, he contends that "[t]ruth and facts are terms that are syno[ny]mous." (ECF No. 54, PageID.602.) However, the Court's consideration is limited to the specific facts set forth in Plaintiff's amended complaint, which are contained in just a few paragraphs as to Haas, Stephenson, and Jenkins-Grant. (ECF No. 49 ¶¶ 12-14, 21-23 & 36-38.)

Second, in arguing that he has alleged Defendants' direct participation, Plaintiff asserts that "[e]ach Defendant is responsible for their own actions[,]" in support of which he cites several factually dissimilar cases. (ECF No. 54,

18

PageID.606.)[10]  However, setting aside the fact that these cases involved

Eighth/Fourteenth Amendment claims with discussion of deliberate indifference,

Plaintiff's claims that Haas, Stephenson, and/or Jenkins-Grant met with Plaintiff

---

[10] *See Taylor v. Michigan Dep't of Corr.*, 69 F.3d 76, 77, 80-81 (6th Cir. 1995)
(Plaintiff brought an Eighth Amendment claim, and, when determining that "[a]
genuine issue of material fact exists about Foltz's awareness of his subordinates'
failure to review properly transfer orders[,]" the Sixth Circuit noted, *inter alia*,
that, "[former Warden] Foltz is charged with abandoning the specific duties of his
position—adopting and implementing an operating procedure that would require a
review of the inmate's files before authorizing the transfers—in the face of actual
knowledge of a breakdown in the proper workings of the department."); *Spencer v.
Bouchard*, 449 F.3d 721, 730-731 (6th Cir. 2006) (Plaintiff was a pre-trial
detainee, and Defendants were Oakland County Sheriff's Office officials.  As to
the Eighth/Fourteenth Amendment claim, the Sixth Circuit noted that, "in the
prison context, an omission often *is* state action, which means that a colloquial
'failure to act' often is *not* a legal 'failure to act.'" *Id.* at 730. The Sixth Circuit
relied in part on *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189,
200 (1989) ("when the State by the affirmative exercise of its power so restrains an
individual's liberty that it renders him unable to care for himself, and at the same
time fails to provide for his basic human needs—*e.g.,* food, clothing, shelter,
medical care, and reasonable safety—it transgresses the substantive limits on state
action set by the Eighth Amendment and the Due Process Clause.") and concluded
that "Spencer's Eighth Amendment claim may properly be premised on the
defendants' failure to provide adequate shelter."); and, *Clark-Murphy v. Foreback*,
439 F.3d 280, 285, 289 (6th Cir. 2006) (Plaintiff's decedent – an inmate – died of
dehydration, and Plaintiff alleged that Defendants were "deliberately indifferent to
Clark's medical needs in violation of the Eighth and Fourteenth Amendments."
When discussing the subjective component, the Sixth Circuit noted:  "With regard
to the dehydration claim, Clark-Murphy has presented evidence indicating that the
water repeatedly was off during many of these defendants' shifts, that other inmates
heard Clark asking for water throughout the week, that officers perceived that
Clark was not drinking and that the prison was on a heat alert throughout this six-
day period.").

but did not follow through are really just a failure to act, not a dereliction of duty akin to *Taylor*, *Spencer*, and *Clark-Murphy*.

Likewise, Plaintiff seems to argue that his amended complaint is based on two theories of liability – direct participation and indirect participation. (ECF No. 54, PageID.606.) He contends that Defendants Haas, Stephenson and Jenkins-Grant "arbitrarily and capriciously discriminated against [him] as a person to access the Courts, retaliated against [him] for exercising [his] right to file non-frivolous complaint/grievances, and other violations which caused substantial injuries to [his] existing and anticipated cases[,]" such as *Burley v. Williamson, et al.*, Case No. 2:16-cv-10712-GCS-PTM (E.D. Mich.). (*Id.*, PageID.606-607.) To be clear, I assume—as I am required to do—that Plaintiff met with Haas, Stephenson and Jenkins-Grant, as Plaintiff alleges in the complaint and is merely stating that, if these Defendants did not follow through, it amounts to a failure to act. "Even assuming the allegations in h[is] complaint are true, [he] has not averred that 'any of the supervisory officials who [are] defendants in this case actively participated in or authorized any harassment' by [M. Williams-Ward or C. Williams]. At best, [he] has merely claimed that [Haas, Stephenson, and Jenkins-Grant] were aware of alleged harassment, but did not take appropriate action. This is insufficient to impose liability on supervisory personnel under § 1983." *Poe v.*

*Haydon*, 853 F.2d 418, 429 (6th Cir. 1988) (quoting *Bellamy v. Bradley,* 729 F.2d 416, 421 (6ᵗʰ Cir. 1984)).

### 4.    First Amendment retaliation (Count II)

Finally, the Court should evaluate the specific claims that appear in Plaintiff's amended complaint, namely Plaintiff's allegations that:  (a) Stephenson "threatened [him] with a[n] up-north transfer if [he] continued to exercise [his] right to the Courts[;]" (b) Jenkins-Grant covered up for M. Williams-Ward and "refused to conduct a reasonable investigation . . . [;]" and (c) Haas "authorized [his] transfer out of MRF in mid-2016."  (ECF No. 49 ¶¶ 36-38.)  Construing these claims with *Haines* in mind, they allege retaliation in violation of the First Amendment, the elements of which are protected conduct, adverse action, and causal connection.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394, 398 (6ᵗʰ Cir. 1999).

Here, the protected conduct is the exercise of his First Amendment rights. (ECF No. 49, ¶¶ 24-26, 28-30, & 47.)  The adverse actions would be Stephenson's alleged threat of transfer "up-north" and Haas's alleged authorization of transfer out of MRF in mid-2016.  (ECF No. 49, ¶¶ 36, & 38.)  To be sure, "[a]s a general matter, a prison official's decision to transfer a prisoner from the general population of one prison to the general population of another is not considered adverse."  *LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013) (citing *Smith v. Yarrow,* 78 F. App'x 529, 543 (6th Cir.2003) (collecting cases)).  "Absent unusual

21

circumstances, prison officials, rather than judges, should decide where a particular

prisoner should be housed." *LaFountain*, 716 F.3d at 948.  However, the Sixth

Circuit has offered guidance as to when transfers may be considered adverse

actions:

> Although several unpublished Sixth Circuit cases have held that
> transfers to the general population of another prison are not typically
> an adverse action, *see Smith v. Yarrow,* 78 [F. App'x] 529, 543 (6th
> Cir.2003) (collecting cases), this Court has held in other cases that *a
> prison transfer* or *the threat of a transfer* can be an adverse action if
> that transfer would result in foreseeable, negative consequences to the
> particular prisoner.  *Siggers–El v. Barlow,* 412 F.3d 693, 701–02 (6th
> Cir.2005) (holding that the transfer was an adverse action because it
> resulted in the foreseeable consequence that the prisoner would have a
> harder time meeting with and paying for his lawyer, thereby inhibiting
> the prisoner's ability to access the courts); *Pasley,* 345 [F. App'x] at
> 985 (holding that a threat to transfer the prisoner far away from the
> prisoner's family was an adverse action because it was foreseeable that
> his family would not be able to visit him).

*Hill v. Lappin*, 630 F.3d 468, 474-475 (6th Cir. 2010) (emphases added).  *See also*

*Berkshire v. Beauvais*, 928 F.3d 520 (6th Cir. 2019) (citing *Hill*, 630 F.3d at 474-

475).  Plaintiff alleges that he was transferred from MRF in mid-2016, presumably

to TCF.  (ECF No. 49, ¶¶ 16, 33.)  Albeit in his motion response, Plaintiff suggests

that TCF cannot provide Kosher meals or his hearing impairment accommodations.

(ECF No. 56, PageID.618.)  Additionally, Plaintiff alleges elsewhere in his

complaint that he "was stabbed in the neck while up at Chippewa . . . [,]" *i.e.*,

Chippewa Correctional Facility (URF), which is one of several MDOC

correctional facilities located in Michigan's upper peninsula, *i.e.*, "up-North."

(ECF No. 49, ¶ 34.)  This sufficiently describes adverse action at the motion to dismiss stage.  Lastly, Plaintiff alleges that Defendants Stephenson and Haas have retaliated against him, which arguably provides the causal connection.  (ECF No. 49, ¶¶ 12, 21, 22, 36-38.)

### F.    Conclusion

Plaintiff seeks to engage in discovery.  (ECF No. 54, PageID.605, 608; ECF No. 49, PageID.565-566.)  However, motions to dismiss are decided on the face of the complaint.  *Crawford v. Washington*, No. 4:17-CV-11423, 2017 WL 8810687, at *9 (E.D. Mich. Nov. 7, 2017) (Patti, M.J.) ("[T]he Court need not look beyond Plaintiff's *pleading* to determine if it satisfies Rule 12(b)(6)."), *report and recommendation adopted*, No. CV 17-11423, 2018 WL 747706 (E.D. Mich. Feb. 7, 2018) (Parker, J.).

Plaintiff's operative pleading attempts to allege:  (1) violations of his First Amendment right "to petition the Government for a redress of grievances[;]" (2) retaliation for exercising his First Amendment rights; and, (3) violations of his Fourteenth Amendment right to "equal protection of the laws."  (ECF No. 49, ¶¶ 26-54.)  For the reasons stated above, with the exception of Plaintiff's First Amendment retaliation claims against Stephenson and Haas, Plaintiff has not "state[d] a claim upon which relief can be granted[,]" Fed. R. Civ. P. 12(b)(6).  Accordingly, the Court should **GRANT IN PART** and **DENY IN PART** MDOC

23

Defendants Haas, Stephenson & Jenkins-Grant's motion to dismiss (ECF No. 51). If the Court agrees with this recommendation, then only the claims against Defendants M. Williams-Ward and C. Williams and the First Amendment retaliation claim against Defendants Stephenson and Haas would remain.

## III.   PROCEDURE ON OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

24

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

Dated:  July 20, 2020                          s/*Anthony P. Patti*

                                        Anthony P. Patti
                              UNITED STATES MAGISTRATE JUDGE