UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD DONALD BURLEY,

                Plaintiff

v.

MICHELLE WILLIAMS-WARD,
RANDALL HAAS,
GEORGE STEPHENSON,
REGINA JENKINS-GRANT, and
CARYLON WILLIAMS, *et al*.

                Defendants.

_____/

Case No. 2:18-cv-12239
District Judge George Caram Steeh
Magistrate Judge Anthony P. Patti

## REPORT AND RECOMMENDATION TO GRANT IN PART and DENY IN PART THE MDOC DEFENDANTS WILLIAMS-WARD, HAAS, STEPHENSON, JENKINS-GRANT, and WILLIAMS'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 85)

**I.**    **RECOMMENDATION:**  The Court should **GRANT IN PART** and

**DENY IN PART** the MDOC Defendants M. Williams-Ward, Haas, Stephenson,

Jenkins-Grant and C. Williams's motion for summary judgment (ECF No. 85).

**II.**    **REPORT:**

    **A.**    **Background**

    Edward Donald Burley is currently incarcerated at the Michigan Department

of Corrections (MDOC) Parnall Correctional Facility (SMT).  (ECF No. 111,

PageID.1266, 1274.)  Of particular note in this case are his claims that he practices Judaism and has bilateral hearing impairment.  (ECF No. 49, ¶¶ 3, 34, 49, 50, 53.)

On July 17, 2018, while confined at SMT, Plaintiff initiated this case against Defendants associated with the MDOC's Macomb Correctional Facility (MRF).  (ECF No. 1, PageID.2-3.)  MDOC Defendants Michelle Williams-Ward, Randall Haas, George Stephenson, Regina Jenkins-Grant, and Carylon Williams are each represented by Michigan's Attorney General.  (ECF No. 16.)

### B.   Operative Pleading and Remaining Claims

Plaintiff was permitted until Thursday, August 22, 2019 by which to file an amended complaint without leave.  (ECF No. 47, PageID.531.)  On August 12, 2019, while incarcerated at the MDOC's Oaks Correctional Facility (ECF), Plaintiff filed an "amended civil complaint/more definite statement."  (ECF No. 49.)  While the caption of the complaint suggests other Defendants, the "Parties" section of the complaint names the same five Defendants.  (ECF No. 49, PageID.549-551 ¶¶ 12-15.)

Plaintiff's three causes of action are based upon either his First Amendment right "to petition the Government for a redress of grievances[,]" or his Fourteenth Amendment right to "equal protection of the laws."  (*Id*., PageID.556-565.)  His prayer for relief is multi-faceted, but it includes requests for compensatory, punitive and presumed damages.  (*Id*., PageID.565-566.)

2

Based on previous dispositive motion practice, only the claims against Defendants M. Williams-Ward and C. Williams and the First Amendment retaliation claim against Defendants Stephenson and Haas remain.  (*See* ECF No. 51; ECF No. 58, PageID.636, 659; ECF No. 59.)

### C.    Instant Motion

On February 18, 2022, Defendants filed a motion for summary judgment, arguing:  (1) Plaintiff's claims against Defendants fail as a matter of law; and, (2) they are entitled to qualified immunity.  (ECF No. 85, PageID.817-844.)[1]  Plaintiff filed a response on March 14, 2022 (ECF No. 94).  He also filed objections to several of Defendants' exhibits (ECF No. 93), which the Court construes in accordance with Fed. R. Civ. P. 56(c)(2), permitting a respondent to object "that material cited to support or dispute a fact cannot be presented in a form that would

---

[1] Attached to Defendants' motion are several exhibits.  (ECF No. 85, PageID.847-924.)  The 78 pages of exhibits were filed together with the motion and brief.  For future reference, "[e]xhibits filed *electronically* must comply with the court's ECF Policies and Procedures."  E.D. Mich. LR 5.1(d)(1) (emphasis added).  This includes R19(b) ("Filing Exhibits to Papers Electronically"), which provides, in part:  "Each exhibit must then be filed and identified as a separate attachment to the paper and must be labeled in the electronic record with an exhibit identifier and brief narrative description."  R19(b)(3).  This enables the Court to know what an exhibit is by just glancing at the docket, saving the Court valuable time in not having to repeatedly go back to the index for reference, and also facilitates citations to a particular exhibit.

be permissible in evidence."  Defendants filed a reply on March 30, 2022.  (ECF

No. 96.)

### D.    Fed. R. Civ. P. 56

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(a).  A fact is material if it might affect the outcome of the case under governing

law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court

"views the evidence, all facts, and any inferences that may be drawn from the facts

in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt.*

*Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of

material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486

(6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2)

(providing that if a party "fails to properly address another party's assertion of

fact," then the court may "consider the fact undisputed for the purposes of the

motion.").  "Once the moving party satisfies its burden, 'the burden shifts to the

nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC*

*v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving

party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

## E. Discussion

### 1. The claims against M. Williams-Ward

#### a. First Amendment access to courts (¶¶ 26-32, 39-48)

Plaintiff declares he has "suffered substantial material prejudice to <u>both</u> existing cases and contemplated cases as a result of Defendants' <u>retaliatory</u>

5

conduct[.]"  (ECF No. 94, PageID.1002 ¶ 11 (emphasis in original).)  "It is well established that prisoners have a constitutional right of access to the courts." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999).  However, "a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only."  *Id.  See also Lewis v. Casey*, 518 U.S. 343, 354-355 (1996).

### i.    *Burley v. Williamson*, et al., Case No. 2:16-cv-10712-GCS-PTM (E.D. Mich.) (¶¶ 26-32)

Within his First Amendment access to courts claim, Plaintiff alleges that, in mid-2015, the named Defendants hindered and obstructed his pursuit of "credible claims in both his criminal and civil [matters]."  (ECF No. 49, ¶ 32; *see also id*., ¶¶ 18, 23.)  More specifically, he alleges they caused him to sustain significant injuries in what eventually became *Burley v. Williamson, et al*., Case No. 2:16-cv-10712-GCS-PTM (E.D. Mich.), because "several defendants were caused to escape liability due to statute of limitations."  (ECF No. 49, ¶ 32; *see also id*., ¶ 18.)

In Case No. 2:16-cv-10712-GCS-PTM (E.D. Mich.), which was filed on February 25, 2016, Defendants were terminated by way of several events, including:  (a) a March 6, 2017 order as to twenty Defendants (ECF No. 99); (b) an October 9, 2018 stipulation and order as to Gerlack and Sherry (ECF No. 147); (c) a January 25, 2019 order as to Guilkie (ECF No. 156); (d) a March 13, 2019 order as to Holmes (ECF No. 162); and, (e) a September 25, 2019 stipulation and order

as to Quiroga (ECF No. 172).  Meanwhile, on July 25, 2019, Judge Steeh entered

an order denying Klatt and Gilkey's motion for summary judgment (ECF No. 169),

at which point it seems only Defendants Williamson, Klatt, and Gilkey remained.

On June 2, 2020, Judge Steeh entered a stipulated order of dismissal.  (ECF No.

176.)

Plaintiff's reference to the dismissal of several defendants in Case No. 2:16-

cv-10712-GCS-PTM (E.D. Mich.) suggests his access to courts claim is based

upon Magistrate Judge Morris's November 2016 report and recommendation (ECF

No. 76) and Judge Steeh's March 6, 2017 observation that "Burley's complaint can

state a viable claim if he properly exhausted the relevant grievance within the last

three years[,]" (ECF No. 99, PageID.1149).

However, the parties' briefing goes beyond the scope of Case No. 2:16-cv-

10712-GCS-PTM (E.D. Mich.).  For example, citing Plaintiff's deposition

testimony (ECF No. 85, PageID.854-856 [pp. 16-23]), Defendants characterize

Plaintiff's claim as challenging the refusal of postage loans "for what he deemed to

be qualifying legal mail[.]"  (ECF No. 85, PageID.818-820.)  *See* MDOC PD

04.02.120 ("Indigent Prisoners") (effective Dec. 3, 2012) (ECF No. 85,

PageID.864-865) and MDOC PD 05.03.118 ("Prisoner Mail") (effective Sept. 14,

2009) (*id*., PageID.867-878).  (ECF No. 94, PageID.1025-1026.)  Plaintiff disputes

this characterization of his access to courts claim, pointing out that he "was not on

indigent status at the time of the complained of violations[.]"  (ECF No. 94, PageID.967-970.)[2]  Yet, also beyond the scope of Case No. 2:16-cv-10712-GCS-PTM (E.D. Mich.) are Plaintiff's claims that he "was denied [the] ability to send out legal mail[,]" such as his May 2016 letters regarding a retaliation grievance. (*Id*., PageID.969, 1022, 1024.)  *See* MDOC PD 05.03.116 ("Prisoners Access to the Courts") (effective April 5, 2021) (ECF No. 94, PageID.1011-1014).  By May 2016, Plaintiff had already filed his February 2016 lawsuit.

Nonetheless, Defendants are not entitled to summary judgment on Plaintiff's First Amendment access to courts claim concerning 2:16-cv-10712-GCS-PTM. Defendants do not seem to mention Plaintiff's 2016 case within their dispositive motion; instead, it seems 2:16-cv-10712-GCS-PTM is only discussed within Plaintiff's attached deposition transcript.  (*See* ECF No. 85, PageID.852-853, 857.) In other words, Defendants have not addressed the alleged injury suffered in 2:16-cv-10712-GCS-PTM.

---

[2] Plaintiff claims that defense counsel has mischaracterized his testimony regarding postage loans.  (ECF No. 94, PageID.969, ECF No. 85, PageID.855 [pp. 20-21].)  He contends defense counsel interrupted his deposition testimony concerning indigent loans and declares that, to the best of his recollection, he "did not apply for indigent status . . . until July 2015." (*See* ECF No. 94, PageID.1001-1004 ¶¶ 5, 19.)  For their part, Defendants cite another portion of Plaintiff's testimony (ECF No. 85, PageID.855-856 [pp. 21-22]) in support of their argument that "Plaintiff's pattern of changing facts just continues."  (ECF No. 96, PageID.1059-1060.)

### ii.    MDOC Policies (¶¶ 39-48)

Within another section of his causes of action labeled, "MDOC Policy

Mandating Prisoners' Access to the Courts," Plaintiff contends that M. Williams-

Ward and others violated the express terms and mandates of MDOC PD 05.03.116

("Prisoners Access to the Courts") and MDOC PD 05.03.118 ("Prisoner Mail").

(ECF No. 49, ¶¶ 39-41; *see also* ECF No. 49, PageID.548 ¶ 4 (mentioning due

process).)  As Defendants acknowledge, "a § 1983 claim may not be based upon a

violation of state procedure that does not violate federal law."  *Laney v. Farley*,

501 F.3d 577, 581 n.2 (6th Cir. 2007) (citing *Brody v. City of Mason*, 250 F.3d

432, 437 (6th Cir.2001)).  *See also McVeigh v. Bartlett*, 52 F.3d 325 (6th Cir.

1995) ("the defendant's alleged failure to comply with a prison policy directive

during his attempt to remove plaintiff's arm from the food slot does not rise to the

level of a constitutional violation because the policy directive simply does not

create a protectible liberty interest.").  (ECF No. 85, PageID.827-828.)

Plaintiff responds to this argument, contending that, in addition to alleging

violations of MDOC PD 05.03.118, his grievances allege constitutional violations

(*see* ECF Nos. 85, PageID.880, 892, 900).  (ECF No. 94, PageID.975-976.)  And,

however well-versed Burley may be in prisoner litigation (*see* ECF No. 85,

PageID.826), Plaintiff reasonably suggests it is not defense counsel's place to

determine whether Burley needs counsel's assistance to file a lawsuit (ECF No. 94,

PageID.976).  Thus, this report construes Plaintiff's First Amendment access to courts claims as based on certain alleged refusals "to process legal mail . . . ." (ECF No. 94, PageID.1000 ¶ 3.)

### (i)      March 30, 2015

Plaintiff alleges that, on March 30, 2015, M. Williams-Ward and C. Williams refused to give him the address of Christopher Snow, who had been endorsed and who Plaintiff "needed to contact . . . for evidence" in *Burley v. Leslie, et al.*, Case No. 1:13-cv00599-RJJ-RSK (W.D. Mich.), as to which the discovery deadline appears to have been January 15, 2016 and which the parties stipulated to dismiss with prejudice on March 7, 2017 (ECF Nos. 82, 217, therein). (ECF No. 49, ¶¶ 16, 19.)  (*See also* ECF No. 94, PageID.1000 ¶¶ 1-2.)  Plaintiff, after mentioning that Defendants "impeded [his] right of access to endorsed civil witness Christopher Snow[,]" and stating such "conspiratory acts caused [him] substantial material prejudice . . . [,]" including being "forced to settle a case less than its valued worth)," alleges M. Williams-Ward "stated she knew [he] liked to litigate and file suits and that she would determine when and if [he] would be able to reach the courts, attorneys, or if [he] would be able to process any legal mail at all[,]" stating so "the first day [he] met her in her office."  (*Id*., ¶ 45.)  Defendants do not address the alleged events of March 30, 2015 when discussing the access to courts claims against M. Williams-Ward.  (*See* ECF No. 85, PageID.820-828.)

10

The record includes a June/July 2016 copy of a retainer agreement between Plaintiff and Attorney Solomon M. Radner regarding *Burley v. Leslie*, *et al*., Case No. 1:13-cv-00599-RJJ-RSK (W.D. Mich.).  (ECF No. 94, PageID.1029-1030.)  At his deposition, Plaintiff testified that he lost the opportunity to conduct discovery in the *Leslie* case, because "by the time [he] got an attorney, Mr. Solomon Radner," it was "well past the time for conducting discovery."  (ECF No. 85, PageID.858 [p. 31].)  (*See also* ECF No. 94, PageID.1001-1002 ¶ 8.)  Nonetheless, even assuming Plaintiff was deprived of the opportunity to "contact [Snow] for evidence in *Burley v. Leslie*, 13-cv-599[,]" (ECF No. 49, ¶ 16), and even if he "lost the ability to obtain discovery information from Mr. Snow[,]" where "discovery closed . . . due to Defendants' conduct[,]" the "[e]xtensive injuries result[ing] from the repeated denial of access to Mr. Snow . . . [,]" (ECF No. 94, PageID.974, 984 (emphasis in original)), are not clear.

### (ii)    April 10, 2015

Plaintiff further alleges that, on April 10, 2015, M. Williams-Ward denied Plaintiff an opportunity to process his legal mail to a Michigan court and refused to afford Plaintiff notary service for a legal document as mandated by MDOC PD 05.03.116.  (*Id*., ¶¶ 24, 43; ECF No. 94, PageID.1001 ¶ 7, 1004 ¶ 23.)  *See also Bounds v. Smith*, 430 U.S. 817, 824–25 (1977) ("indigent inmates must be

provided at state expense with paper and pen to draft legal documents with notarial services to authenticate them, and with stamps to mail them.").

Pointing to the substance and investigation of Grievance MRF-15-04-00704-015b (ECF No. 85, PageID.880-884), as well as MDOC PD 05.03.118 ("Prisoner Mail") and MDOC Operating Procedure 05.03.118 CFA ("Processing of Prisoner Legal Mail and Court Filing Fees") (*id.*, PageID.885-890), Defendants contend "it was determined that no policy or procedure was violated by Williams-Ward[,]" Plaintiff "simply misunderstands the applicable MDOC policies[,]" and, "[i]t is plain from Burley's own grievance that he did not hand deliver the mail to Williams-Ward by 10:00 a.m., and therefore no policy, much less constitutional right, was violated by Williams-Ward." (ECF No. 85, PageID.820-822; *see also* ECF No. 96, PageID.1061.) Plaintiff declares that M. Williams-Ward "would often process [his] legal mail <u>after</u> 10:00 AM," but selectively "refused to do so on the date complained." (ECF No. 94, PageID.1002 ¶ 12 (emphasis in original).) But, even if Plaintiff was "denied opportunity to have notary service" from Williams-Ward, and even if Plaintiff challenges the thoroughness and objectivity of Jenkins-Grant's grievance-related investigation (ECF No. 94, PageID.971-972), it is not clear how this denial resulted in requisite injury (*see id.*, PageID.974).

12

### (iii)   May 18, 2015

Plaintiff also alleges that, on May 18, 2015, M. Williams-Ward refused to process Plaintiff's legal mail concerning a new case and retaliated against him. (*Id.*, ¶ 24.)  More specifically, he claims M. Williams-Ward refused to sign the "Authorization Denied" portion of his MDOC "Disbursement Authorization (Expedited Legal Mail – Prisoner)" form (*id.*, PageID.1006) concerning legal mail to then-MDOC Director Heyns and also claims she "threaten[ed] [him] with an up-north transfer if [he] continued to file complaints against her."  (*Id.*, ¶ 44.)  (*See also* ECF No. 94, PageID.1000 ¶ 3, 1001 ¶ 7.)

As to these events, Defendants point to MRF-15-05-00955-017z (*id.*, PageID.892-896), alleging that "Burley simply misunderstands the applicable MDOC policy."  (ECF No. 85, PageID.822-823.)  Citing MDOC PD 05.03.118 ("Prisoner Mail") and MDOC Operating Procedure 05.03.118 CFA ("Processing of Prisoner Legal Mail and Court Filing Fees"), the Step I response states:  "Grievant is not allowed, per policy and procedure, to use the expedited process to send mail to the Director unless the Director is a party to a lawsuit due to pending litigation."  (*Id.*, PageID.893; *see also* ECF No. 96, PageID.1061.)  Defendants also provide a copy of the "Legal Mail and Court Filing Fee Logbook – Mailroom/Control Center," which shows that on May 18, 2015 postage was disbursed for *Burley v. Prelesnik*, Case No. 2:2011-cv-11258 (E.D. Mich.) (petition for writ of *habeas*

13

*corpus*) and another case. (*Id*., PageID.898.) Thus, Defendants contend

"Williams-Ward processed and approved postage loans for two other mail items

for Burley that <u>very same day</u>." (*Id*., PageID.823 (emphasis in original).)[3] (ECF

No. 85, PageID.823.)

In response, Plaintiff challenges the thoroughness and objectivity of Jenkins-

Grant's grievance-related investigation, and he notes: "mail that is clearly

identified as being sent to the business address of one of the following may be

sealed by the prisoner and shall not be opened or otherwise inspected by staff prior

to mailing," MDOC PD 05.03.118 ¶¶ R, S (effective Sept. 14, 2009). (ECF No.

85, PageID.867-878.) And, to the extent Defendants rely upon the Logbook as

evidence that two other mail items were processed on May 18, 2015, Plaintiff notes

his "complaints of three distinct denials" by M. Williams-Ward. (ECF No. 94,

PageID.973; *see also* ECF No. 85, PageID.857 [p. 27].)

Indeed, Plaintiff concedes that M. Williams-Ward "had filed several legal

mail parcels of the same nature after the complained of denials without requiring

verification that the attorney was a party to a suit." (ECF No. 94, PageID.1000 ¶

3.) Still, notwithstanding the appearance that "other mail items" were processed

---

[3] Plaintiff objects to this exhibit as "not properly authenticated, nor filled out
as to the facility or monthly report, not accompanied by any evidentiary
support as to the entries on the log, and . . . inadmissible . . . under the
Michigan Rules of Evidence." (ECF No. 93, PageID.957 ¶ 1.)

14

for Plaintiff on May 18, 2015, even assuming M. Williams-Ward improperly

processed some of Plaintiff's mail on May 18, 2015, it is not clear how this alleged

impropriety resulted in requisite injury.  If Plaintiff's assertion that he experienced

"impediments and frustrations to contact attorneys to file for Motion to Re-Open

Habeas Corpus case," (ECF No. 94, PageID.974), was a reference to *Burley v.*

*Prelesnik*, Case No. 2:2011-cv-11258 (E.D. Mich.), then Plaintiff should have

provided further detail about the alleged injury.

### (iv)   June 12, 2015

Plaintiff additionally alleges that M. Williams-Ward "refused to send out

legal parcels (3 total) on [June 12, 2015][.]"  (ECF No. 49, ¶ 12.)  Plaintiff alleges

these were "new cases," which, seemingly, he sought to send to then-MDOC

Director Heyns, then-U.S. Senator Levin, and then-Governor Snyder (*id.*, ¶ 20).[4]

These allegations were the subject of Plaintiff's June 15, 2015 grievance MRF-

2015-06-1106-17z, as to which the Step I response cited MDOC PD 05.03.118

("Prisoner Mail") and MDOC Operating Procedure 05.03.118 CFA ("Processing of

---

[4] It is not clear whether these allegations concern the same-day MDOC
Expedited Legal Mail Disbursement Authorization forms attached to
Plaintiff's original complaint.  (*See* ECF No. 1, PageID.25-27.)  Although
the dates and addressees on the forms are consistent with Plaintiff's
allegations in the amended complaint (ECF No. 49, ¶ 20), the fact that the
forms list Case No. 04-013795-FC (Genesee County) – *i.e.*, Plaintiff's state
court criminal case – belies Plaintiff's allegation that the parcels at issue
concerned a "new case."

Prisoner Legal Mail and Court Filing Fees") and stated:  "Grievant is not allowed, per policy and procedure, to use the expedited process to send mail to the Governor, Director or Senator unless they are parties to a lawsuit due to pending litigation."  (ECF No. 85, PageID.900-901; *see also* ECF No. 96, PageID.1061.)

To be sure, it is not clear that the alleged events of June 12, 2015 are a basis for Plaintiff's access to courts cause(s) of action against M. Williams-Ward.  (*See* ECF No. 49, ¶¶ 32, 40, 43-45.)  However, it is briefed by Defendants as though it were.  (ECF No. 85, PageID.823-827.)  In response, Plaintiff disputes Defendants' characterization of MRF-2015-06-1106-17z as grieving M. Williams-Ward's denial of a postage loan (*see* ECF No. 85, PageID.923).  (ECF No. 94, PageID.973.)  In fact, this grievance alleges "continued retaliation" and "dereliction of duty," in addition to a failure to comply with MDOC PD 05.03.118 – presumably ¶¶ R, S – and MDOC PD 05.03.116 – presumably ¶ D, which permits prisoners "to have confidential and uncensored correspondence with an attorney, the courts, and legitimate legal assistance organizations" as set forth in the prisoner mail policy (ECF No. 94, PageID.1011).  (ECF No. 85, PageID.900.)  Still, notwithstanding Plaintiff's declaration that M. Williams-Ward had processed "several legal mail parcels of the same nature after the complained of denials without requiring verification that the attorney was a party to a suit[,]" (ECF No. 94, PageID.1000 ¶ 3), even assuming M. Williams-Ward improperly processed

16

Plaintiff's mail on June 12, 2015, it is not clear how this alleged impropriety

resulted in requisite injury.

### b.   First Amendment retaliation (¶¶ 33-38)

Within his First Amendment retaliation claim, Plaintiff alleges the following

as to M. Williams-Ward:

> . . . M. Williams retaliated against me for filing verbal and written
> complaints on her.  I also filed various and diverse grievances on her
> raising retaliation for her denials of access to the courts, legal
> organizations, attorneys at law, counselors, and other legal
> organizations I wished to consult on legal issues.  In the interest of
> brevity, I adopt and incorporate by reference all arguments advanced
> relating to the retaliatory acts alleged by M. Williams.  I also allege
> there were chilling effects.  The retaliatory acts persisted for a
> protracted period of time from my initial arrival on [March 26, 2015]
> through my transfer [to TCF] in mid-2016. . . .[5]
>
> M. Williams further retaliated against me where she refused to
> provide me the contact information for an MDOC Lansing Official
> civil witness (Christopher Snow). . . . I arrived at MRF on [March 26,
> 2015] and immediately consulted with <u>both</u> Michelle Williams and
> Carolyn Williams, while in Four Unit.  C. Williams told M. Williams
> that I had been there before and I [plaintiff] like to file grievances.  M.
> Williams glared at me and said words I could not hear.  From that
> point forward, M. Williams would continually harass me and retaliate
> against me when I processed legal mail, sought notary services [April
> 10, 2015], and tried to contact attorneys and other legal organizations.
> She did process a lot of my legal mail, but would also refuse to
> process the ones I referenced previously.  M. Williams would also
> have the officers harass and degrade me on many occasions.  The
> retaliation was directly connected to my exercise of accessing the
> courts.  She was directly involved in the retaliation and would

---

[5] Plaintiff has previously suggested that TCF cannot provide Kosher meals
or his hearing impairment accommodations.  (ECF No. 56, PageID.618; *see
also* ECF No. 94, PageID.1004 ¶ 21.)

> encourage others to retaliate against me.  There was a direct
> correlation in the retaliation.  I was chilled in attempting to process
> the legal mail I intended to, as she threatened me on a number of
> occasions with an up-north transfer.  I was stabbed in the neck while
> up at Chippewa [(URF)] and feared she would have me transferred
> back there.

(ECF No. 49, ¶¶ 33-34.)

"A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X*, 175 F.3d at 394.

### (i)    Protected conduct

As for "protected activity," Defendants cite Plaintiff's deposition testimony about a verbal complaint (*see* ECF No. 85, PageID.857-858 [pp. 27-31]) and argue that Plaintiff's claims are "bare allegations of malice [that] would not suffice to establish a constitutional claim[,]" *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998).  (ECF No. 85, PageID.830-831.)  Yet, Plaintiff convincingly claims his attempts to "contact registered attorneys . . . [,]" "contact a court [of] law . . . [,]" or "have legal documents notarized" by M. Williams-Ward constitute "protected activity."  (ECF No. 94, PageID.978.)  The alleged March 30, 2015 effort to contact Snow for purposes of *Burley v. Leslie, et al.*, Case No. 1:13-cv-00599-RJJ-

18

RSK (W.D. Mich.) was likely protected conduct, and the same could be said of the claim that M. Williams-Ward "impaired and frustrated [his] right to apply . . . to re-open [hi]s Federal Habeas Corpus case[,]" presumably a reference to *Burley v. Prelesnik*, Case No. 2:2011-cv-11258 (E.D. Mich.), regarding which Plaintiff "intended on contacting an attorney . . . ." (*Id*.)  Moreover, taking into consideration Plaintiff's assertion that he made a typographical error by using "S. Williams" in MRF-00704 (ECF No. 94, PageID.975), this April 2015 grievance, as well as the May 2015 MRF-00955 and June 15, 2015 MRF-01106 grievances, name M. Williams-Ward.  (ECF No. 85, PageID.880, 892, 900.)  Put simply, there are multiple instances of alleged protected conduct.  (*See also* ECF No. 94, PageID.1003 ¶ 17.)

### (ii)    Adverse action

As to "adverse action," Defendants cite MRF-15-06-01106-017z – wherein Plaintiff stated, "I fear further retaliation by M. Williams, *i.e.* up-north transfer, or additional reprisal[,]" (ECF No. 85, PageID.901-904) – and assert that "Burley was not actually threatened with a transfer from Williams-Ward . . . ."  (ECF No. 85, PageID.831.)  Defendants contend that Plaintiff is "now only adding this to his complaint retrospectively[,]" (*id*.); yet, Plaintiff alleges in his amended complaint that M. Williams-Ward "threatened [him] on a number of occasions with an up-north transfer."  (ECF No. 49, ¶ 34.)  Additionally, Plaintiff declares:

> M. Williams made threats of 'up north ride out' if I continued to file grievances / complaints against her.  She had knowledge that I was assaulted up at Chippawa CF [(URF)], where a prisoner Tate stabbed me in the neck.  I feared she would live up to her threat and took her threat seriously.  She threatened me on more than two oc[c]assions with a[n] up north ride out . . . .

(ECF No. 94, PageID.1002 ¶ 9.)  And, even though the Sixth Circuit "has repeatedly held that transfer from one prison to another prison cannot rise to the level of an 'adverse action' because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights[,]" Burley is describing more than the threat of "a mere transfer to another institution of the same security level, with no other aggravating factors[.]"  *Friedmann v. Corr. Corp. of Am.*, 11 F. App'x 467,470-471 (6th Cir. 2001) (internal citations and quotations omitted). Plaintiff also points out that he was denied opportunities to send out legal mail to attorneys and courts of law and to access a notary, and that he was "denied access to a court endorsed civil witness so discovery could be conducted[.]"  (ECF No. 94, PageID.979; *see also* ECF No. 49, ¶¶ 24, 34.)  In other words, there are multiple instances of alleged adverse action.  At trial, Defendants will be free to challenge any related, alleged inconsistencies between the contents of Plaintiff's grievances, the allegations in Plaintiff's amended complaint, and the statements in Plaintiff's declaration.

20

### (iii)   Causal connection

Finally, Defendants note that, even if Plaintiff could establish a causal connection between his protected conduct and Williams-Ward's alleged adverse actions, "[i]f the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Thaddeus-X*, 175 F.3d at 399.  (ECF No. 85, PageID.831-832.)  M. Williams-Ward has declared that she "processed all mail presented to [her] by prisoner Burley pursuant to MDOC policy, the same way that [she] processed mail presented to [her] by any other prisoner[,]" (*id.*, PageID.907 ¶ 4);[6] thus, Defendants argue, Williams-Ward "would have taken the same action, following policy, in the absence of the protected activity."  (ECF No. 85, PageID.831-832.)[7]  In response, Plaintiff claims M. Williams-Ward's declaration is "self-serving" and does not show she "would have taken the same action in the absence of the protected activity[.]"  *Thaddeus-X*, 175 F.3d at 399.  *See also Maben v. Thelen*, 887 F.3d 252, 267 (6th Cir. 2018). (ECF No. 94, PageID.980.)

---

[6] Plaintiff's objections to this declaration (ECF No. 93, PageID.957-958 ¶ 2) have either been addressed in the Court's recent order (ECF No. 113) or are overruled because Plaintiff's assertion that the declaration "directly contradicts" her responses to requests for admissions, if true, is fodder for trial.  (*See also* ECF No. 94, PageID.987-988.)

[7] The Court presumes Defendants' reference to "Blunt's alleged protected activity[,]" (ECF No. 85, PageID.832), is a typographical error.

Here, there is a "genuine dispute" as to the "material fact" of causation. Fed. R. Civ. P. 56(a). Even though M. Williams-Ward denies retaliating against Plaintiff or threatening him with an "up north" transfer for his complaints or grievances, her declaration is general and basic in nature, because, *e.g.*, she attests she processed Burley's mail "the same way" as she did "any other prisoner[,]" and treated all prisoners "the same, including prisoner Burley[,]" and she "did not treat Burley differently . . . ." (ECF No. 85, PageID.907-908 ¶¶ 4-7.) More importantly, as noted above in the adverse action discussion, Plaintiff attests in his declaration that M. Williams-Ward "made threats of 'up north ride out' if I continued to file grievances/complaints against her . . . . She threatened me on more than two oc[c]assions with a[n] up north ride out . . . ." (ECF No. 94, PageID.1002 ¶ 9.) Thus, the declarations call into question whether M. Williams-Ward made threats and/or the motivation for her legal mail decisions. In sum, given the various examples of alleged protected conduct and alleged adverse action, the non-specific nature of M. Williams-Ward's declaration, and Plaintiff's own declaration, M. Williams-Ward is not entitled to summary judgment on Plaintiff's First Amendment retaliation claim against her.

c.      **Fourteenth Amendment equal protection (¶¶ 49-54)**[8]

"The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty., Ohio*, 430 F.3d 783, 788 (6th Cir. 2005) (citing *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 312 (6th Cir.2005)).  Plaintiff invokes each of these bases.  (ECF No. 94, PageID.981-983.)

i.      **Burdening a fundamental right**

Plaintiff alleges that M. Williams-Ward singled him out due to him exercising his First Amendment right to access the courts.  (ECF No. 49, ¶ 49.)  He alleges that, on several occasions, M. Williams-Ward "refused to process clearly defined legal mail, notarize legal documents, and further denied [him] access to a

---

[8] My July 20, 2020 report and recommendation, which reviewed the allegations against Haas, Stephenson, and Jenkins-Grant, observed specific 14th Amendment equal protection allegations as to M. Williams-Ward (ECF No. 58, PageID.647-648), although, at Plaintiff's January 13, 2022 deposition, the parties considered Count III as against M. Williams-Ward and C. Williams (ECF No. 85, PageID.852).  While Plaintiff purports to bring this cause of action against multiple Defendants, the mention of Defendants C. Williams, Haas, and Stephenson is not sufficiently specific. (*Compare* ECF No. 49, ¶¶ 49-51, 53-54; *with*, *id*., ¶ 52.)  Thus, this report proceeds as if Plaintiff brings this claim only against Defendant M. Williams, as previously suggested.

[f]ederally endorsed civil witness (Christopher Snow)" with respect to *Burley v. Leslie, et al.*, Case No. 1:13-cv00599-RJJ-RSK (W.D. Mich.). (ECF No. 49, ¶ 51.)

Plaintiff argues that "state agents" did not give him "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts[,]" *Bounds*, 430 U.S. at 825. (ECF No. 94, PageID.981.) To the extent Plaintiff's Fourteenth Amendment equal protection claim against M. Williams-Ward is based on burdening his fundamental right of access to the courts, it should only proceed consistent with the discussion detailed above – *i.e.*, only Plaintiff's access to courts claim concerning *Burley v. Williamson, et al.*, Case No. 2:16-cv-10712-GCS-PTM (E.D. Mich.) (*see* ECF No. 49, ¶ 32) should survive summary judgment.

### ii.    Targeting a suspect class

Plaintiff argues that Defendants discriminated against him based on the protected classes of race (white) and religion (Judaism) with respect to processing legal mail. (ECF No. 94, PageID.981-982.) "To establish an equal protection violation under the Fourteenth Amendment, [Plaintiff has] to establish that (1) he was treated disparately from similarly situated prisoners, and (2) the disparate treatment is the result of intentional and purposeful discrimination." *Davis v. Heyns*, No. 17-1268, 2017 WL 8231366, at *4 (6th Cir. Oct. 16, 2017). For her part, M. Williams-Ward has declared: "A prisoner's race, national origin, religion,

24

or any other defining characteristic had no bearing on the way they were treated by me.  I did not treat Burley differently from any other prisoner."  (ECF No. 85, PageID.907 ¶ 6.)

### (a)    Race and national origin

The MDOC's Offender Tracking Information System (OTIS) lists Plaintiff's race as "white."  (*See* www.michigan.gov/corrections.)  Plaintiff alleges he personally witnessed M. Williams-Ward "process various and diverse legal parcels of [an African American prisoner], as well as permit him to send out legal mail . . . [,]" whereas she denied processing similar matters for Plaintiff based on racial and national origin discrimination.  (ECF No. 49, ¶ 5.)  At his deposition, Plaintiff explained his rationale for alleging discrimination based on race and religion:

> I have information and I've seen a whole bunch of minorities, so to speak, African Americans, Mexicans, and other races going up there because I had a view to the door, and she was processing their legal mail and I had information that she was processing all of their legal mail and she never rejected any of their mail.

(ECF No. 85, PageID.856 [p. 24].)  Still, when asked, "did you actually review these other prisoners' mail before they were mailed out[,]" Plaintiff responded:

> No, sir, that's strictly prohibited under the policy.  I did not view those, but I had seen them coming back with the legal expedited form, and I had asked them, oh, you're sending out legal mail, but I didn't review them, their things, because people don't want you reviewing their legal mail.  That would be very intrusive and -- and bogus on my behalf to ask, hey, let me read your mail before you go process it or after you processed it so I did not.

25

> I just had knowledge, personal firsthand knowledge, that individuals
> had told me -- individuals of color and minorities had told me that
> they had processed legal mail, and she didn't give them any problems
> with processing their legal mail.
>
> But I had physically seen the -- return the goldenrod copy of the legal
> expedited when they was coming from the front where she process.
> She typically process at the control -- at the officers' control, which I
> had a birds eye view of, and I [saw] her do a score and I never seen
> any of the person that she had denied access to process their legal
> disbursements other than myself.

(ECF No. 85, PageID.856-857 [pp. 25-26].)  Then, the following exchange took

place:

> Q.    Okay, and one more follow-up to that, did you -- you say you
> believe she did this because of your race and religion.  Did she make
> any comments to you, any insulting comments or other comments
> referencing your race or religion?
>
> A.    She didn't state anything per se as far as my race.  . . .

(ECF No. 85, PageID.857 [p. 26].)

Citing this testimony, Defendants claim Burley would not have "personal

knowledge whether these pieces of mail properly qualified for postage loans or

not." (ECF No. 85, PageID.934.)  Plaintiff has a different take on his testimony,

arguing that he "as well as others, would personally observe the maltreatment she

subjected [him] to, even where she never subjected African American or minority

prisoners to such maltreatment."  (ECF No. 94, PageID.981-982.)  Similarly, he

declares:

26

> M. Williams[-Ward] discriminated against me, a White prisoner, as I physically observed her process every one of the African-American and Latino prisoners['] legal mail.  I physically observed them take their legal mail up to [her], after they announced[,] "legal mail[.]"  The legal mail was also recognizable expedited legal mail forms.  She would process every one of their legal mail parcels.  However, due to my race as a White prisoner, she would harass and discriminate against me.  . . . She would single me out on several oc[c]asions to harass me and have custody officers harass me due to my race.

(ECF No. 94, PageID.1001 ¶ 4.)  Also, he references the declaration of fellow prisoner Craig Alley #437681, who attested that M. Williams-Ward "did not like White prisoners as she would rarely let them enter her office, but would let the Black and Latino prisoners in whenever they wanted."  (*Id.*, PageID.1008 ¶ 2]).  (*See* ECF No. 94, PageID.982.)

In other words, he claims the fact he did not hear M. Williams-Ward state anything about his race is not dispositive on the issue of racial discrimination.  (*Id.*, PageID.982.)  Perhaps so.  Yet, as Defendants convincingly state, Plaintiff "has come nowhere close to showing the extisten[ce] of purposeful discrimination against him based on his race[.]"  (ECF No. 85, PageID.834-835.)  "[T]o prevail under the Equal Protection Clause, [Plaintiff] must prove that the decisionmakers in *his* case acted with discriminatory purpose."  *McCleskey v. Kemp*, 481 U.S. 279, 292–93 (1987).  Plaintiff "offers no evidence specific to his own case that would support an inference that racial considerations played a part in . . ." M. Williams-Ward's processing of his legal mail.  *McCleskey*, 48 U.S. at 293.  Nor does he have

27

adequate firsthand knowledge of what the minority prisoners' mail consisted to show that he was similarly situated with them in all pertinent respects.  Thus, he is unable to show that he was treated disparately or unequally.

### (b)   Religious affiliation

Plaintiff alleges that M. Williams-Ward singled him out "based on [his] religious affiliation (Judaism)[.]"  (ECF No. 49, ¶ 49.)  Plaintiff claims that M. Williams-Ward "knew (as she stated when [he] first met her in March 2015), that [he] was a litigator . . . and that she did a file review and [saw he] was a practicing Jew."  (ECF No. 49, ¶ 50).  At his deposition, Plaintiff testified that M. Williams-Ward:

> . . . knew that I was of the Jewish faith because the very first time I spoke with her and I asked her for th[e] whereabouts of Mr. Snow and she refused to give it to me I told her I was on the vegan line or the kosher line.  And I'm alleging that she done that because she was -- she wouldn't harass or she wouldn't discriminate against people of color or minorities, however, she discriminated against me based upon my race and my religious affiliation.

(ECF No. 85, PageID.856 [p. 24].)

Citing this testimony, Defendants argue that Plaintiff's claims "are contradictory and show that Burley has no valid religious discrimination claim." (ECF No. 85, PageID.835.)  In his response, Plaintiff contends that M. Williams-Ward singled him out "as a Jewish adherent where she wouldn't per[m]it me to wear my yarmulke in public even where she permitted other Jewish prisoners to

wear theirs[,]" and she "also made derogatory religious based remarks against me as a practicing Jewish adherent."  (ECF No. 94, PageID.983.)  (*See also id*., PageID.1001 ¶¶ 4, 6.)[9]  Additionally, fellow prisoner Alley declared that M. Williams-Ward "would not treat other Jewish prisoners the way she mistreated" Plaintiff, and she "would let them wear their head gear but not" Plaintiff.  (ECF No. 94, PageID.1008 ¶ 5.)  And, Alley declared that M. Williams-Ward "made slanderous remarks about his religion[.]"  (*Id*., PageID.1008 ¶ 2.)

As Defendants see it, Plaintiff's claim regarding the yarmulke is "new," and "not properly presented . . . [,]" because it was "raised . .. for the first time in his opposition to summary judgment[.]"  (ECF No. 96, PageID.1055-1056.)  Having considered Plaintiff's evidence, I agree with Defendants that, "Burley has come nowhere close to showing the existence of purposeful discrimination against him based on his religion . . . ."  (ECF No. 85, PageID.835-836.)

### iii.  Intentionally treating one differently (*i.e.*, class of one)

Plaintiff alleges that M. Williams-Ward discriminated against him "where she refused to treat [him] like others similarly situated[,]" *i.e.*, she "would process other Jewish prisoners['] legal correspondences, notary services, and other legal

---

[9] Male prisoners belonging to Judaism are permitted to possess certain religious personal property, including a yarmulke.  *See* MDOC PD 05.03.150A (effective Jan. 20, 2022).

29

services . . . [,]" but "she denied [him] access to these services."  (ECF No. 49, ¶ 49.)  According to Plaintiff, M. Williams-Ward "targeted [him] specifically to harass, single [him] out, and refuse[d] to process select legal parcels, where there was no rational basis for her actions."  (*Id.*)  Plaintiff's "litigations in the Federal Courts" is the alleged basis for his "alternate theory," *i.e.*, a "class-of-one equal protection claim."  (ECF No. 49, ¶ 54.)

"There are . . . two elements to a class-of-one theory:  (1) the government treated the plaintiff differently from a similarly situated party and (2) the government had no rational basis for doing so."  *Tuscola Wind III, LLC v. Almer Charter Twp.*, 327 F. Supp. 3d 1028, 1044 (E.D. Mich. 2018).  *See also Sinclair v. City of Ecorse*, 561 F. Supp. 2d 804, 810 (E.D. Mich. 2008) ("To succeed on such a class-of-one claim, Plaintiff must show that he has been intentionally treated differently from others who are similarly situated and that there is no rational basis for the difference in treatment.") (citation omitted), *aff'd in part*, 366 F. App'x 579 (6th Cir. 2010).

Here, Plaintiff claims M. Williams-Ward "discriminated against [him] due to [his] litigations in the Federal Courts[.]"  (*Id.*)  As Defendants point out from judicially noticeable Federal Bureau of Prisons (BOP) statistics, there were 52,531 total prisoner petitions in 2015.  Thus, they argue that Burley cannot be a "class of one," because "prison litigation is exceedingly common through the United States

and Michigan prisons."  (ECF No. 85, PageID.836.)  This is convincing, consistent

with the volume and percentage of prisoner civil rights cases on the Undersigned's

docket.  Moreover, while Plaintiff argues in response that M. Williams-Ward

"intentionally treated [him] differently than others similarly situated without any

rational basis for the difference[,]" *e.g.*, he was singled out and treated differently

than other Jewish prisoners (ECF No. 94, PageID.982-983), he has not put forth

specific evidence of a class-of-one claim against M. Williams-Ward.  Indeed, this

conclusion is buttressed by Plaintiff's deposition testimony, which only mentions

"class of one" or being "singled . . . out" during the questioning about Defendant

C. Williams, a different defendant.  (ECF No. 85, PageID.853 [pp. 12-13].)

### 2.    The claims against C. Williams

Plaintiff identifies C. Williams as an Assistant Resident Unit Supervisor

(ARUS).  (ECF No. 49, PageID.551 ¶ 15.)  On March 19, 2015, Plaintiff was

authorized to engage in prisoner-to-prisoner mail with Christopher Snow for

purposes of *Burley v. Leslie, et al.*, Case No. 1:13-cv-00599-RJJ-RSK (W.D.

Mich.).  (ECF No. 49, ¶ 16; ECF No. 94, PageID.998; *see also* ECF No. 1,

PageID.38-39 [Director's Office Memorandum 2013-7].)  Plaintiff claims that,

shortly after he arrived at MRF on March 26, 2015, he informed M. Williams-

Ward and C. Williams of his authorization to engage in prisoner-to-prisoner mail

with Snow; yet, on March 30, 2015, C. Williams and M. Williams-Ward allegedly

refused to give him Snow's address.  (*See*, *e.g.*, *id.*, ¶¶ 16, 19, 35.)  Also, Plaintiff seems to claim that C. Williams "held my legal mail for over a week in early 2016, causing me to miss a court deadline[,]" about which he filed a grievance, "only to be transferred to [Thumb Correctional Facility (TCF) in mid-2016] out  of retaliation."  (*Id.*, ¶¶ 16, 33, 38.)

### a.      Access to courts and equal protection

As for Plaintiff's First Amendment access to courts claim (Count I) against C. Williams concerning 2:16-cv-10712-GCS-PTM (*see* ECF No. 49, ¶¶ 32, 45), Defendants are not entitled to summary judgment for the same reasons set forth above as to M. Williams-Ward, namely Defendants have not addressed the alleged injury suffered in 2:16-cv-10712-GCS-PTM.  (*See* Section E.1.a.)

However, notwithstanding the parties' briefing on Plaintiff's Fourteenth Amendment equal protection claim (Count III) as to C. Williams (*see* ECF No. 85, PageID.837-839 and ECF No. 94, PageID.985), the Court has noted above that the mention of Defendants C. Williams, Haas, and Stephenson is not sufficiently specific and that this report proceeds as if Plaintiff brings this claim only against Defendant M. Williams, as suggested by the prior report and recommendation (*see* ECF No. 58, PageID.647-648).

### b.      First Amendment retaliation

Finally, there is Plaintiff's First Amendment retaliation claim (Count II) against C. Williams.  Plaintiff claims he consulted with M. Williams-Ward and C. Williams upon his March 26, 2015 arrival at MRF, C. Williams "told M. Williams[-Ward] that [he] had been there before and [he] like[d] to file grievances[,]" (*id*., ¶ 34), and C. Williams retaliated against him by refusing to provide the address of civil witness Snow, who was an endorsed witness in *Burley v. Leslie*, *et al*., Case No. 1:13-cv00599-RJJ-RSK (W.D. Mich.).  (*Id*., ¶ 35.)  His case was allegedly substantially prejudiced, because he could not obtain necessary evidence and was "chilled from legal activity . . . ."  (*Id*.)

As to protected conduct and causal connection, Defendants refer to Plaintiff's testimony.  (ECF No. 85, PageID.837.)  For example, when defense counsel asked what C. Williams was retaliating for, Plaintiff answered:

> Well, like I explained to you earlier, Mr. Reasons, I was there in 2005, approximately ten -- ten months (sic) earlier, and I had filed a number of grievances related, and she knew that I had accessed the courts and I had litigated in the courts, and she, in essence, retaliated against me for filing grievances, previous grievances, while I was at Macomb. I'm assuming that's why she retaliated against me.

(ECF No. 85, PageID.853 [p. 10].)  Then, defense counsel asked, "You're saying she retaliated against you for grievances you filed ten years before this?"  (*Id*. [p. 10].)  Plaintiff answered:

> Well, that was -- that was -- that was one of my contentions, but the
> retaliation claim *I don't know exactly* -- I can't present you with direct
> evidence, only circumstantial evidence.  You know, it had to be *some*
> *type* of retaliation if you're -- and I'm showing you the paperwork
> because I showed her the paperwork that I had that I was allowed to
> correspond with this individual, and then she still refused to give me
> the whereabouts of Mr. Snow.

(*Id.*, PageID.853 [p. 11] (emphases added).)  When pressed about the reason for C.

Williams's alleged retaliation, Plaintiff answered:

> Well, like I said, I can't -- Mr. Reasons, I cannot present you with the
> direct evidence on why she retaliated. I could only give you the
> circumstances that preceded on why she was even likely to retaliate
> against me because she -- by all rights according to policy she should
> have give[n] me that name. She should -- I mean not the name but she
> should have give[n] me that whereabouts of Mr. Snow.

(*Id.*)

In response to Defendants' assertion that Plaintiff "didn't get what he

wanted[,]" (ECF No. 85, PageID.837), Plaintiff explains he wanted that to which

he was constitutionally entitled – the ability to communicate with a court-endorsed

civil witness in *Burley v. Leslie, et al.*, Case No. 1:13-cv00599-RJJ-RSK (W.D.

Mich.), which had been approved by a Lansing official.  (ECF No. 94,

PageID.984.)  (*See also* ECF No. 94, PageID.1000-1004 ¶¶ 1, 2, 3, 8 [Pl.'s

Declar.].)  Plaintiff claims that Snow "possessed valuable evidence" to which

Plaintiff was denied access, and, as a result, Plaintiff "lost critical evidence where

discovery closed in the *Leslie* case due to Defendants' conduct."  (*Id.*)  (*See also*

ECF No. 85, PageID.858 [p. 31]; ECF No. 94, PageID.1029-1030.)  Plaintiff also

34

notes that Defendants failed to submit a declaration from C. Williams.  (ECF No. 94, PageID.985.)  However, as was the case with M. Williams-Ward, even assuming Plaintiff was deprived of the opportunity to "contact [Snow] for evidence in *Burley v. Leslie*, 13-cv-599[,]" (ECF No. 49, ¶ 16), and even if he "lost the ability to obtain discovery information from Mr. Snow[,]" where "discovery closed . . . due to Defendants' conduct[,]" the "[e]xtensive injuries result[ing] from the repeated denial of access to Mr. Snow . . . [,]" (ECF No. 94, PageID.974, 984), are not clear.[10]  Moreover, Plaintiff's retaliation claim is too vague and unsupported to be cognizable.  He is right that he lacks direct evidence, but he does not supply the circumstantial evidence to which he alludes.  "It had to be some type of retaliation" (ECF No. 85, PageID.853, p.11) simply does not meet the summary judgment standard.  To claim that, because he did not get something he should have, and that, therefore, it must prove unlawful motive or conduct, is a *non sequitur*, *i.e.*, it does not follow.  To survive summary judgment, one "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

---

[10] If the Court agrees with this conclusion, then it need not address the parties' exhaustion argument (*see* ECF No. 85, PageID.839-840, ECF No. 94, PageID.985) on the claim(s) against C. Williams.

### 3. The First Amendment retaliation claim against Stephenson and Haas

#### a. Stephenson

Plaintiff alleges he met with Stephenson in his office and brought the retaliatory acts to his attention. (ECF No. 49, ¶ 36.) Stephenson said he would personally get involved, but he also "further endorsed the actions of both" M. Williams-Ward and C. Williams. (*Id*.) Moreover, Plaintiff alleges Stephenson "chilled" Plaintiff's attempt to file a civil suit – *Burley v. Williamson*, *et al*., Case No. 2:16-cv-10712-GCS-PTM (E.D. Mich.), which, in any case, was filed on February 25, 2016 – as Stephenson threatened Plaintiff with an up-north transfer if he "continued to exercise [his] right to the Courts." (*Id*.; *see also id*., ¶ 13.)

Preliminarily, as the Court previously recognized (*see* ECF No. 58, PageID.652), to the extent Plaintiff's claims concern Stephenson's May and June 2015 review of Step I grievances in MRF-15-04-00704-015B (ECF No. 85, PageID.880-881), MRF-15-05-00955-017Z (*id*., PageID.892-893), and MRF-15-06-01106-017z (*id*., PageID.900-901), Stephenson "cannot be liable under § 1983" where his only role was "the denial of administrative grievances or the failure to act[.]" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The same can be said of a failure to act following: (i) Plaintiff's May 18, 2015 letter to Stephenson about ARUS M. Williams, complaining, *inter alia*, that "[s]he only harasses Caucasian prisoners[,]" (ECF No. 1, PageID.37); (ii) Plaintiff's June 14, 2015

letter to Stephenson and Haas regarding continued denial of access to courts and violations of policy by ARUS M. Williams-Ward (ECF No. 1, PageID.33), to which Stephenson responded in a June 18, 2015 form reply, checking, "Your concern(s) have been noted[,]" and further commenting, "Please be advised that you need to adhere to policy when processing legal mail[,]" (*id*., PageID.34); and, (iii) Stephenson's April 21, 2016 reply to prisoner correspondence, which reflects that Plaintiff's concerns were noted and that Stephenson would call Burley out on Monday (presumably April 25, 2016) to discuss the issue (ECF No. 94, PageID.1028). Also, to the extent Plaintiff claims Stephenson chilled his attempt to file *Burley v. Williamson*, *et al*., Case No. 2:16-cv-10712-GCS-PTM (E.D. Mich.) by "threaten[ing] [Plaintiff] with a[n] up-north transfer if [he] continued to exercise [his] right to the Courts[,]" (ECF No. 49, ¶ 36), the lawsuit was indeed filed on February 25, 2016.

This would seem to leave Plaintiff's alleged meeting with Stephenson and threat of an "up-north transfer if [he] continued to exercise [his] right to the Courts." (*Id*., ¶ 36.) Defendants attack two of the elements of a First Amendment retaliation claim. Defendants contend Plaintiff's grievances were frivolous, and, therefore, not protected conduct. While "[a]n inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf[,]" this right is protected "only if the grievances are not frivolous." *Herron v.*

37

*Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). *See also Lewis v. Casey*, 518 U.S. 343, 353 n.3 (1996) ("Depriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions."). Defendants appear to support their argument that Burley's grievances were frivolous by referring to their earlier discussion of MRF-00704, MRF-00955, and MRF-01106, wherein Defendants discuss "Burley's disagreement and/or misunderstanding of MDOC policy[,]" (*see* ECF No. 85, PageID.820-824). (ECF No. 85, PageID.840). The Step I grievance responses do not make clear that the grievances were frivolous. (*Id*., PageID.881, 893, 901.)

As to causal connection, Defendants point to Stephenson's February 22, 2022 declarations that "[d]ealing with prisoner complaints and grievances is an everyday part of [his] job[,]" "MRF houses well over 1000 prisoners and written complaints and grievances are received continually[,]" and he "did not treat Burley differently, nor did [h]e threaten him with an 'up-north' transfer because he made complaints or filed grievances against staff." (ECF No. 88, PageID.932 ¶¶ 4, 5.)[11] Still, even though they submit it is "not a realistic scenario" that Stephenson "would single out one prisoner for making complaints . . . .[,]" (ECF No. 85,

---

[11] Plaintiff objects to this declaration (ECF No. 93, PageID.958 ¶ 3), but the bases for his objection were addressed by the Court in its August 22, 2022 order (ECF No. 113) denying Plaintiff's motion to strike (ECF No. 95). (*See also* ECF No. 94, PageID.987-988.)

PageID.840), Plaintiff points to:  (i) Stephenson's November 29, 2021 response

that, "[a]fter reasonable inquiry," he "lack sufficient knowledge or information to

admit or deny" that he "personally called Plaintiff Burley to [his] office and spoke

to him about the complaint-of-harassment of M. Williams[,]" (ECF No. 94,

PageID.1018); and, (ii) Plaintiff's March 1, 2022 declaration that he "only met

with George Stephenson during the time he called me up to his office[,]" and "he

threatened me with an up north ride out if I continued to make complaints on

staff[,]" (ECF No. 94, PageID.1004 ¶ 21; *see also id.*, PageID.1003 ¶¶ 13-15).

(ECF No. 94, PageID.985-986.)  Thus, the declaration from Stephenson, if not also

Stephenson's discovery answer, and Plaintiff's declaration directly contradict each

other as to the meeting and what was said, which calls into question the motivation

for the alleged threat of "up-north" transfer.  That being the case, Defendants

apparent attack of the Burley declaration – *e.g.*, it is an "unsupported accusation"

and "a perfectly crafted statement for a federal retaliation lawsuit[,]" (ECF No. 85,

PageID.841) – and Plaintiff's challenges to Stephenson's discovery response and

declaration – *e.g.*, they are contradictory and perjurious, or Plaintiff's suggestion

that Stephenson could have provided a better discovery response if he had

consulted the MDOC itinerary/call-out information at his disposal (ECF No. 94,

PageID.986) – may be challenged by cross examination at trial.[12]  What is

"realistic" is a point of persuasive argument for the trier of fact.

### b.   Haas

### i.   Warden as supervisor

Preliminarily, Plaintiff describes Warden Haas as "responsible for the

operation of MRF," and "vested with" certain responsibilities.  (ECF No. 49, ¶ 12.)

"[A] supervisory official's failure to supervise, control or train the offending

individual is not actionable unless the supervisor 'either encouraged the specific

incident of misconduct or in some other way directly participated in it.  At a

minimum a plaintiff must show that the official at least implicitly authorized,

approved, or knowingly acquiesced in the unconstitutional conduct of the

---

[12] Likewise, Plaintiff also questions defense counsel's integrity given his
role in preparing the "false and misleading" Stephenson declaration, which
Plaintiff alleges was "manufactured" by counsel and then "endorse[d]" by
the client.  (*Id.*, PageID.986-987.)  Plaintiff asks the Court to remember that,
during the August 4, 2021 status conference, the parties discussed delay in
service of Defendants' September 4, 2020 motion to conduct limited
discovery and for leave to file a second motion for summary judgment (ECF
No. 63), which the Court denied on October 5, 2020 (ECF No. 64), but after
which Plaintiff filed an October 14, 2020 motion to vacate (ECF No. 66) and
an October 30, 2020 response (ECF No. 70).  (ECF No. 94, PageID.988,
1003 ¶ 18; *see also* ECF No. 102.)  (*See also* ECF No. 107, PageID.1216,
1217, 1220, 1227.)  Still, the Court is not inclined to agree that defense
counsel "crafted the submitted sham declarations in order to foster a fraud
upon" this Court.  (*Id.*, PageID.987-988.)

offending officers.'" *Shehee*, 199 F.3d at 300 (quoting *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)).

Plaintiff alleges he personally informed Haas "in both writing and verbally" that M. Williams-Ward refused to process his legal mail. (ECF No. 49, ¶¶ 12, 21.) As for written complaints, the record indicates that Plaintiff wrote to Haas (and Stephenson) on June 14, 2015 about "continued denial of access to courts [and] violations of policy by ARUS M. Williams[-Ward][,]" (ECF No. 1, PageID.33), and it appears Stephenson provided a response on June 18, 2015 (*id.*, pageID.34). As for verbal complaints, Plaintiff alleges he spoke with Haas "on at least two (2) occasions in the Chow Hall . . . [,]" presumably about M. Williams-Ward and C. Williams, and Haas "stated he would get involved and achieve a resolve." (ECF No. 49, ¶¶ 21, 38.)

As the Court previously recognized (ECF No. 58, PageID.652), to the extent Plaintiff's claims concern Haas's November 2015 Step II grievances responses in MRF-15-04-00704-015B (ECF No. 85, PageID.882-883), MRF-15-05-00955-017Z (*id.*, PageID.894-895), or MRF-15-06-01106-017z (*id.*, PageID.902-903), Haas "cannot be liable under § 1983" where his only role was "the denial of administrative grievances or the failure to act[.]" *Shehee*, 199 F.3d at 300.

### ii.    Merits

Plaintiff also alleges Haas "encouraged M. Williams[-Ward] to further deny [him] opportunity to process legitimate legal mail." (*Id.*, ¶ 21.)  And, he alleges that Haas "encouraged and/or acquiesced in the retaliatory acts" of others (again presumably about M. Williams-Ward and C. Williams), "when he authorized my transfer out of MRF in mid-2016[,]" and "was personally and actively involved in all aspects of the retaliation and actual denials of [unspecified] constitutionally protected activities."  (ECF No. 49, ¶ 38; *see also id.*, ¶¶ 12, 21.)

In support of their argument that Plaintiff's claim against Haas "fails as a matter of law and should be dismissed[,]" Defendants point to the following portion of Burley's January 13, 2022 testimony:

> Q.    Okay, and then I -- I'll move on to Randall Haas. Now, your remaining claim against him is that -- and correct me if I'm wrong, that your transfer to TCF was in relation for these complaints and grievances you were filing?

> A.    Yes, sir, because like I stated earlier, the warden of the institutions has the final say of the transfer of the prisoner to whatever facility it is, and that was my allegation that -- in fact that he did have a direct hand because he was the ultimate decider making that recommendation to Lansing, that he made that recommendation to have me transferred out of there based upon my protected constitutional conduct.

> Q.    And why do you believe that his role in your transfer was based on retaliation?

> A.    Because of the simple fact I sent him the two or three letters and he acknowledged the letters, and he had the conversations

> with me in the chow hall and he told -- like I said, he told me he
> was going to get down to and he was going to get it corrected,
> but he refused to get it corrected. And I -- I submit that he done
> this essentially just to get me out of the institution. I was
> making too many waves or creating too many I don't want to
> say problems but creating too many grievances within the staff
> because I filed approximately 18 grievances when I was at
> Macomb.

(ECF No. 85, PageID.841-842, 859-860 [pp. 37-38].)

Defendants contend Plaintiff's claim that, on certain occasions, "she did not properly process his legal mail for retaliatory reasons . . . [,]" is "wholly conclusory." (ECF No. 85, PageID.842.) The Undersigned is inclined to agree. *Skinner v. Bolden*, 89 F. App'x 579, 579–80 (6th Cir. 2004) ("Without more . . . [Plaintiff's] conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive."). In his response, Plaintiff accurately notes that "any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true[,]" *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (citing *Adams v. Metiva,* 31 F.3d 375, 382 (6th Cir.1994)). (ECF No. 94, PageID.989.) Seemingly critical of Defendants' "exclusive" reliance on his deposition testimony, Plaintiff makes a general reference to his amended complaint (ECF No. 49) and his declaration – presumably his declaration that Haas "threatened [him] with a transfer out of MRF if [he] continued to make complaints[,]" and/or that Plaintiff "*sincerely believe[s]* [Haas] was responsible for having [Plaintiff] moved to an institution (RCF) that could <u>not</u> accommodate [his]

43

approved religious meals (kosher diet)[,]"  (ECF No. 94, PageID.1002 ¶ 10 (italics added, underscoring in original)).  (ECF No. 94, PageID.989.)  Nonetheless, he still has not shown how his first amendment retaliation claim against Haas is other than conjecture.  (*See* ECF No. 94, PageID.989.)

### iii.    Exhaustion

Moreover, Defendants argue that neither of Plaintiff's two fully-exhausted TCF grievances – TCF-16-05-0267-14E and TCF-16-05-0268-24Z – "relate to his transfer to TCF or name Defendant Haas."  (ECF No. 85, PageID.842-843, 912-924 [Ex. K].)  Preliminarily, Plaintiff objects to Defendants' attachment of TCF grievances on several bases.  (ECF No. 93, PageID.958 ¶ 4.)

Plaintiff responds that the grievance process was "rendered unavailable by grievance coordinator E. Taylor where she refused to process the Haas grievance."  (ECF No. 94, PageID.989.)  (*See also id*., pageID.1003 ¶ 16.)  He specifically points to a May 14, 2016 MRF Grievance Form (*id*., PageID.1019-1020), a May 14, 2016 letter from Burley to Grievance Coordinator Taylor regarding a retaliation grievance (*id*., PageID.1021-1022), and a May 30, 2016 letter from Burley to Grievance Coordinator Taylor regarding a May 14, 2016 retaliation grievance (*id*., PageID.1023-1024).  (ECF No. 94, PageID.989.)  Plaintiff declares Taylor did not answer either of his letters, "nor did she ever provide [him] a receipt or grievance identifier number."  (ECF No. 94, PageID.1004 ¶ 20.)  He contends

his "retaliatory transfer claim against Haas should be permitted to proceed[,]"

because "[a] prisoner need not exhaust remedies if they are not 'available[,]'" *Ross*

*v. Blake*, 578 U.S. 632, 636 (2016).  (ECF No. 94, PageID.989.)  In the event the

Court disagrees, Plaintiff requests a hearing.  (*Id*., PageID.989-990.)

 In their reply, Defendants contend this is "new evidence as to grievance

exhaustion . . . [,]" which has "zero indicia of reliability and [is] nothing more than

self-serving hearsay documents typed up by Plaintiff[,]" in support of which they

refer to:  (a) Plaintiff's February 2019 response, namely his declaration that he

"filed a grievance against both Haas and Stephenson with Ms. Taylor, however,

she would not give [him] a receipt[,]" (ECF No. 27, PageID.295 ¶ 10); and, (b)

Plaintiff's June 2019 response that "the two grievances filed against Haas and

Stephenson are the ones at issue[] here[,]" (ECF No. 43, PageID.499).  (ECF No.

96, PageID.1056-1057.)  And, Defendants compare the "new grievance" to TCF-

16-05-00268-024-Z, which is dated May 2016 and by which Plaintiff sought to

"immediately be transferred back to TCF[,]" (ECF No. 85, PageID.919).  (ECF

No. 96, PageID.1058.)  Finally, pointing to Plaintiff's February 2019 declaration

that he mistakenly listed S. Williams instead of C. Williams in MRF-15-04-00704-

015b (ECF No. 27, PageID.295 ¶ 7) and his August 2019 allegation that he

"inadvertently list[ed] S. Williams on the grievance, as I intended on grieving M.

Williams[,]" (ECF No. 49, PageID.555 ¶ 24), Defendants contend Plaintiff has

changed his story, because "at the point in time of the amended complaint it benefitted Plaintiff to claim that the grievance was against M. Williams-Ward, as Defendants' exhaustion motion against C. Williams was already denied." (ECF No. 96, PageID.1058-1059.)

As for Defendants' claims of "new" grievance evidence, it is important to note that Plaintiff's amended complaint alleges that Taylor "refused to process the Grievances [he] initiated against both Warden Haas and Deputy Warden Stephenson." (ECF No. 49, ¶¶ 46, 42.) Nonetheless, if the Court agrees that Plaintiff's first amendment retaliation claim against Haas is conclusory, then it need not resolve the legitimacy of Plaintiff's proffered grievances.

### 4. Qualified immunity

Finally, Defendants argue that they "are entitled to qualified immunity as they did not commit a clearly established constitutional violation against Plaintiff Burley." (ECF No. 85, PageID.843-844.) Plaintiff responded to this argument (ECF No. 94, PageID.990-993).

Defendants' argument is unavailing. Preliminarily, to the extent Defendants argue that "a reasonable officer in [M. Williams-Ward's] position would have had no reason to believe that the MDOC mail policy," *i.e.*, MDOC PD 05.03.118, "violated clearly established law," (ECF No. 85, PageID.844), the claims surviving against M. Williams-Ward are not based on the constitutionality of the MDOC's

46

mail policy.  Moreover, for the reasons stated above, there are certain claims

against certain Defendants as to which there are genuine disputes of material facts.

Fed. R. Civ. P. 56(a).  Thus, the above discussion of the surviving claims against

C. Williams and Stephenson at least in pertinent part dispels Defendants' assertion

that "C. Williams, Stephenson, and Haas have shown that no constitutional

violation occurred[.]"  (ECF No. 85, PageID.844.)

### F.      Conclusion

To the extent Plaintiff's response seeks recruitment of counsel or requests a

hearing to consider Fed. R. Civ. P. 11 sanctions (ECF No. 94, PageID.987-988),

the Court has thrice addressed requests for counsel (ECF Nos. 50 & 53, 56 & 64,

71 & 72), and "[a] motion for sanctions must be made separately from any other

motion and must describe the specific conduct that allegedly violates Rule 11(b)."

Fed. R. Civ. P. 11(c)(2).  Moreover, a Rule 11 sanctions motion "must be served

under Rule 5, but it must not be filed or be presented to the court if the challenged

paper, claim, defense, contention, or denial is withdrawn or appropriately corrected

within 21 days after service or within another time the court sets."  (*Id*.)

In sum, the Court should conclude:  (1) as to M. Williams-Ward, Defendants

are not entitled to summary judgment on (a) Plaintiff's First Amendment access to

courts claim, with only the portion concerning *Burley v. Williamson*, *et al*., Case

No. 2:16-cv-10712-GCS-PTM (E.D. Mich.) surviving (Section E.1.a), (b) the First

Amendment retaliation claim (Section E.1.b), or (c) the Fourteenth Amendment equal protection claim, with only the portion based on burdening a fundamental right associated with *Burley v. Williamson*, *et al*., Case No. 2:16-cv-10712-GCS-PTM (E.D. Mich.) surviving (Section E.1.c); (2) Defendants are not entitled to summary judgment on Plaintiff's First Amendment access to courts claim against <u>C. Williams</u>, with only the portion concerning *Burley v. Williamson*, *et al*., Case No. 2:16-cv-10712-GCS-PTM (E.D. Mich.) (Section E.2.a) surviving; (3) Defendants are not entitled to summary judgment as to the remaining First Amendment retaliation claim against <u>Stephenson</u> (Section E.3.a), but they are entitled to summary judgment on the remaining First Amendment retaliation claim against <u>Haas</u> (Section E.3.b); and, (4) Defendants are not entitled to qualified immunity as to those claims that survive summary judgment, because there are disputed material facts (Section E.4).  Accordingly, for the reasons stated above, the Court should **GRANT IN PART** and **DENY IN PART** the MDOC Defendants' motion for summary judgment (ECF No. 85).

### III.    PROCEDURE ON OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: September 8, 2022

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE